**In re Application of Randy Blake McCULLOUGH, on behalf of Zachary Blake McCULLOUGH and Victoria Sharon Louise McCullough.**

**Randy Blake McCULLOUGH, Petitioner,**

v.

**Mary Ann McCULLOUGH, Respondent.**

No. CIV. A. 98–118J.

United States District Court,
W.D. Pennsylvania.

May 11, 1998.

Brenda Yurick, Papernick & Gefsky, Pitts-burgh, PA, for Petitioner.

### *MEMORANDUM ORDER*

D. BROOKS SMITH, District Judge.

This memorandum order is issued in sup-port of the Order And Warrant Of Arrest,

docket no. 4, which I issued in this matter yesterday, May 11, 1998. That morning, Randy Blake McCullough (hereinafter "petitioner"), filed a Petition and Complaint for Return of Child to Petitioner and For a Warrant in Lieu of a Writ of Habeas Corpus, docket no. 1, pursuant to The Convention on the Civil Aspects of International Child Abduction, done at the Hague on 25 October 1980 (hereinafter "the Convention"), and the International Child Abduction Remedies Act (hereinafter "ICARA"), 42 U.S.C. § 11601 et seq. Petitioner sought, inter alia, extraordinary ex parte relief.

Petitioner averred that his wife, Mary Ann McCullough (hereinafter "respondent"), wrongfully removed their children, Zachary Blake McCullough and Victoria Sharon Louise McCullough, from their residence at 66 Stanley Avenue, Kitchener, Ontario, Canada, and that she was wrongfully retaining them in her parents' home located in Barnesboro, Cambria County, Pennsylvania. Petitioner, appearing ex parte with his counsel, testified that he lived with respondent and their children in Kitchener, Ontario until Monday, March 23, 1998. On Sunday, March 22, 1998, petitioner, a self-employed truck driver, left for his usual weekly trucking run which lasts two to three days. He telephoned home that evening, spoke with respondent and said "goodnight" to the children. On the evening of Monday, March 23, 1998, petitioner again telephoned home to talk with his wife and children, but his telephone calls went unanswered.

The next morning, on Tuesday, March 24, 1998, at 7:43 A.M., petitioner telephoned the home of Gloria and Leroy Keith, respondent's parents, to inquire if they knew the whereabouts of their daughter. Petitioner was advised that respondent was at the Keith residence with the children. During a brief telephone conversation with the respondent, petitioner was advised that the "end time" was near and that she and their children would not be returning to Canada.

Petitioner understood the reference to the "end time" as a statement which related to his wife's religious beliefs as a member of the Philadelphia Church of God. It is petitioner's understanding that respondent, as a member of that sect, must be ready to flee to Petra, Jordan if and when the church's leader directs. Apparently, adherents believe that only by escaping to Petra will God save them from an apocalyptic event. According to petitioner, respondent considers such a directive from the leader as tantamount to a command from God. It is also petitioner's understanding that some members of the church have already traveled to Jordan.

Because the petitioner feared that respondent might flee with their children, he contacted an attorney in Canada. Based on the advice of his Canadian counsel, petitioner filed a petition with the Attorney General in Canada under the Convention in the hope of regaining physical custody of the children, thereby enabling him to proceed with a custody case in Ontario. Petitioner filed the instant proceeding after seeking relief under the Convention and ICARA.

Only a handful of courts have been confronted with cases arising under the Convention and ICARA. Fortunately, the Court of Appeals for the Third Circuit has decided one such case of first impression. In *Feder v. Evans–Feder*, 63 F.3d 217 (3d Cir.1995), the Third Circuit was presented with a petition under the Convention for the return of a child wrongfully retained in the United States. The court noted that:

> The Convention's approach to the phenomenon of international child abduction is straightforward. It is designed to restore the "factual" status quo which is unilaterally altered when a parent abducts a child and aims to protect the legal custody rights of the non-abducting parent. Thus the cornerstone of the Convention is the mandated return of the child to his or her circumstances prior to the abduction if one parent's removal of the child from or retention in a Contracting State has violated the custody rights of the other, and is therefore, "wrongful."

*Id.* at 221 (citing *Hague Convention*, Article 12). The removal or retention of a child is "wrongful" under the Convention if it breaches the "rights of custody attributed to a person ...either jointly or alone, under the law of the State in which the child was habitually resident immediately before the

removal or retention" and such custody rights were actually being exercised. *Hague Convention,* Article 3. "For purposes of the Convention, 'rights of custody' shall include rights relating to the care of the person of the child, and in particular, the right to determine the child's place of residence." *Feder,* 63 F.3d at 221 (quoting *Hague Convention,* Article 5a).

In *Feder,* the threshold question facing the court was the situs of the minor child's habitual residence. The mother had removed the child from Australia and had retained him in her new home in Jenkintown, Pennsylvania, causing the father to petition under the Convention for the return of the child. The district court concluded that the child's habitual residence was Jenkintown, Pennsylvania and that the mother's retention of the child there was not wrongful. Accordingly, the district court concluded that the Convention was inapplicable and denied the father's petition.

After reviewing the few cases which have construed the term "habitual residence of a child," the Third Circuit defined this term to mean "the place where he or she has been physically present for an amount of time sufficient for acclimatization and which has a 'degree of settled purpose' from the child's perspective." *Id.* at 224. The court concluded that the child's habitual residence was Australia, contrary to the district court's adjudication. Accordingly, the *Feder* court, in applying the Convention, had to decide whether the father had custody rights which were breached by the mother's retention of the child in Pennsylvania and, if so, whether the father had actually been exercising those rights at the time of the wrongful retention. *Id.* at 225. The court answered those questions in the affirmative and vacated the district court's denial of the father's petition, remanding the matter for a determination of whether any exceptions to mandatory return applied. *Id.* at 226.

In *Feder,* the petition for the return of the child was served upon the mother before any hearing was held. In the case before me, however, petitioner did not serve his initial pleading upon the respondent because he contended that notice would only serve as an impetus for her to flee to Jordan. Consequently, petitioner requested that this court: (1) issue a "warrant of arrest" for the two children, Zachary and Victoria McCullough; (2) order that physical custody be given to petitioner; (3) give respondent notice of a hearing to be held promptly on the merits of petitioner's petition seeking the return of the children to Ontario; and (4) order the return of the children to Canada.

■ Accordingly, this court had to promptly determine an issue not addressed in *Feder:* the propriety of an *ex parte* request to seize children who were alleged to have been wrongfully removed from their "habitual residence." Under the ICARA, which implements the Convention, any court exercising jurisdiction of an action seeking the return of a child "may take or cause to be taken measures under Federal or State law, as appropriate, to protect the well-being of the child involved or to prevent the child's further removal or concealment before the final disposition of the petition." 42 U.S.C. § 11604(a). At the same time, the Act prohibits a court from granting a provisional remedy pursuant to § 11604(a) which would remove a child from "a person having physical control of the child unless the applicable requirements of state law are satisfied." 42 U.S.C.A. § 11604(b).[1] I find support in both Federal procedural rules, and in the substantive and procedural law of Pennsylvania, for the extraordinary emergency relief being sought by petitioner.

First, the Pennsylvania Rules of Civil Procedure applicable to custody and visitation matters contain a provision authorizing the grant of "special relief." Pa.R.C.P. 1915.13. Such relief includes "the award of temporary

---

1. Another issue of first impression presented here is whether the "best interests of the child" standard, long applied by Pennsylvania courts in child custody cases, is applicable in the provisional remedy setting. *See generally White v. White,* 437 Pa.Super. 446, 650 A.2d 110, 112–13 (1994). It is clear to the undersigned that that polestar of custody adjudication does not apply in a merits determination of this case which is to be decided "in accordance with the Convention." 42 U.S.C.A. § 11603(d). For purposes of granting a temporary provisional remedy under 42 U.S.C.A. § 11604, however, I hold that the "best interests of the child" standard is applicable.

custody, partial custody or visitation" and "the issuance of appropriate process directing that a child or a party or person having physical custody of a child be brought before the court."

Further, Pennsylvania's Juvenile Act provides for the issuance of a "warrant of arrest" under the following circumstances:

If it appears from affidavit filed or from sworn testimony before the court that the conduct, condition, or surroundings of the child are endangering his health or welfare or those of others, *or that he may abscond or be removed from the jurisdiction of the court* or will not be brought before the court notwithstanding the service of the summons, the court may issue a warrant of arrest.

42 Pa.C.S.A. § 6335(c) (emphasis added). I specifically invoked this statute in my Order and Warrant Of Arrest issued yesterday.

▪ For procedural guidance, I analogize petitioner's request to a claim for a temporary restraining order under Federal Rule of Civil Procedure 65. *See Sinclair v. Sinclair,* 121 F.3d 709 (table, text in WESTLAW at 1997 WL 428897) (6th Cir.1997) (district court issued a temporary restraining order under Convention and ICARA and federal marshals took children into protective custody). The grant of injunctive relief "is an 'extraordinary remedy, which should be granted only in limited circumstances.' " *Instant Air Freight Co. v. C.F. Air Freight, Inc.,* 882 F.2d 797, 800 (3d Cir.1989) (quoting *Frank's GMC Truck Center, Inc. v. General Motors Corp.,* 847 F.2d 100, 102 (3d Cir. 1988)). "Generally speaking, courts apply the standards for granting a preliminary injunction in determining the propriety of issuing a temporary restraining order." *Tootsie Roll Indus., Inc. v. Sathers, Inc.,* 666 F.Supp. 655, 658 (D.Del.1987).

▪ In order to obtain injunctive relief, the moving party must show:

"(1) a reasonable probability of eventual success in the litigation, and (2) that it will be irreparably injured *pendente lite* if relief is not granted to prevent a change in the status quo." Moreover, while the burden rests upon the moving party to make

these two requisite showings, the district court "should take into account, when they are relevant, (3) the possibility of harm to other disinterested persons from the grant or denial of the injunction, and (4) the public interest."

*Acierno v. New Castle County,* 40 F.3d 645, 653 (3d Cir.1994) (citations omitted). An injunction should not be granted without a "clear showing of immediate irreparable injury." *ECRI v. McGraw–Hill, Inc.,* 809 F.2d 223, 226 (3d Cir.1987); *Instant Air Freight Co.,* 882 F.2d at 800.

▪ Further, to prove irreparable harm, the moving party "must 'demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following trial.' " *Acierno,* 40 F.3d at 653 (citations omitted). Mere economic loss "does not constitute irreparable harm." *Id.*

▪ This Court concludes that plaintiff has established the prerequisites for obtaining a temporary restraining order (TRO) directing that the children be taken into custody immediately and brought before this court. First, there is a reasonable probability of eventual success on the merits of petitioner's request based upon the Convention and the ICARA.

▪ The sworn testimony of petitioner, taken *ex parte,* demonstrates that Zachary is five years old and his sister, Victoria, is three years of age. Respondent is the mother and petitioner is the father of both children. Both children were born in Kitchener, Ontario, Canada and have resided there with both parents since birth. These facts establish that (1) the children fall within the scope of the Convention which applies to children less than 16 years of age, and (2) the habitual residence of the children is Kitchener, Ontario. *See Feder,* 63 F.3d at 224.

The applicability of the Convention also requires that I determine whether petitioner has custody rights that have been breached and whether he was actually exercising those rights at the time respondent left the marital home for Pennsylvania. Under Ontario's Children's Law Reform Act, "the father and the mother of a child are equally entitled to custody of the child." Children's Law Re-

form Act, R.S.O.1990, c. C. 12, § 20.–(1). Because petitioner was residing with the children and involved in their daily care and control prior to the respondent's removal of the children, it would appear petitioner can satisfy the requirement of the Convention that the remaining parent was actually exercising custody immediately before the children were removed. *See Hague Convention*, Article 3. Accordingly, on the limited record before me, petitioner, as the natural father of Zachary and Victoria, has shown at least a reasonable probability that he can prove custody rights and that the removal of the children from the family home in Kitchener without his knowledge and approval was wrongful.

■ Irreparable harm must also be demonstrated for TRO relief to lie. Were respondent to flee this jurisdiction with the children prior to this court accomplishing a transfer of physical custody, the very purpose of the Convention and the ICARA would be defeated. This, by definition, is irreparable harm.

In light of the above, I issued the order directing the United States Marshal to serve respondent with a "warrant of arrest" for the children and copies of the pleadings filed thus far, and that he bring the children before this court forthwith. That was accomplished yesterday without incident, and I proceeded to conduct an *in camera* session with both parties and both children present.

Because respondent was without counsel when she accompanied the children to my chambers, I did not make inquiry of her other than to ask if she had any concerns about the children's safety or well-being if I were to transfer physical custody to her husband until an evidentiary hearing could be held the following day. She stated that she had no such concerns. It was readily apparent to this court that the two children interacted well with both parents. I sought to explain to respondent the limited purpose of the Convention and the ICARA, and that I lacked the authority to make any final custody determination. I assured both parties,

and counsel for petitioner, that pending an evidentiary hearing, I would act in what I determined were the "best interests" of the children.

I scheduled an evidentiary proceeding for today at 10:00 A.M., but informed the parties that if respondent were unable to retain local counsel on such short notice, I would look favorably upon a request for a reasonable continuance.[2] Not surprisingly, respondent has been unable to retain counsel overnight, and this morning's evidentiary hearing must be continued. Because of the nature of the allegations in the petition, and because I believe prompt resolution of the narrow issues before me to be in the best interests of all concerned, the evidentiary hearing will be rescheduled promptly. It is therefore

ORDERED this 12th day of May, 1998, that the evidentiary hearing scheduled for 10:00 A.M. this date is hereby re-scheduled to *Friday, May 15, 1998, at 9:30 A.M., in Courtroom A, 319 Washington Street, Johnstown, Pennsylvania.* It is further

ORDERED that "physical custody," as that term is defined in Pa.R.C.P. 1915.1(b), of Zachary Blake McCullough and Victoria Sharon Louise McCullough, shall remain with Randy Blake McCullough pending the hearing scheduled for Friday morning. Petitioner is encouraged to permit respondent to have "visitation," as that term is defined in Pa.R.C.P. 1915.1(b), with the subject children, prior to the Friday hearing.

---

**2.** Respondent advised that she does have counsel in Canada who was retained for purposes of filing for both divorce and custody in that foreign

jurisdiction. I need not address here any evidentiary significance of this revelation.