Angeliki LIVANOS, Appellant,

v.

Nikolaos LIVANOS, Appellee.

No. 01–09–00489–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Dec. 30, 2010.

---

Gary Caswell, San Antonio, TX, Sallee S. Smyth, Richmond, TX, for Appellant.

Alene Ross Levy, Katharine D. David, Haynes & Boone, LLP, Laura D. Dale, Myres, Dale & Associates, P.C., Houston, TX, for Appellee.

Panel consists of Justices KEYES, HIGLEY, and BLAND.

## OPINION

EVELYN V. KEYES, Justice.

Appellee, Nikolaos Livanos ("Nick"), brought a petition for the return of his minor son, Evangelos, pursuant to the Hague Convention on the Civil Aspects of International Child Abduction ("Hague Convention") against his estranged wife, Angeliki Livanos ("Angie").[1] After Angie did not attend the scheduled hearing on the petition, the trial court signed a default order against her, ordering Angie to return Evangelos to Nick and to pay $68,300 in attorney's fees and expenses.[2] In four issues on appeal, Angie contends that (1) the default order rendered against her is void due to defects in the service and return of process; (2) the trial court erred in denying her motion for new trial because the undisputed evidence reflected that Nick did not properly serve her; (3) the expedited nature of Hague Convention proceedings does not abdicate either Texas procedural rules regarding proper service or due-process protections; and (4) the trial court abused its discretion in awarding excessive and unreasonable attorney's fees and expenses to Nick.

We reverse the judgment and remand the case for a new trial.

## Background

Angie and Nick, who are both dual citizens of Greece and the United States, married in Athens in 1989 and had two children together, Kalliopi and Evangelos.[3] Angie was hospitalized in Greece from December 24, 2006 to January 25, 2007, and diagnosed with "psychotic syndrome of paranoid type." The parties separated in

---

1. Convention on the Civil Aspects of International Child Abduction, Oct. 25, 1980, T.I.A.S. No. 11,670, 1434 U.N.T.S. 48.

2. Evangelos was ultimately discovered in Child Protective Services' custody in Maryland several weeks after the trial court rendered this default order against Angie. Nick brought a second Hague Convention petition in a Maryland federal district court, which the district court granted. Nick and Evangelos returned to Greece shortly thereafter.

3. Evangelos was five years old at the time of the events of this case, but Kalliopi was eighteen and not subject to the relevant Greek custody orders.

September 2007, and both brought "applications for relief" in a Greek court seeking custody of their children. The Greek court temporarily awarded custody of the children to Nick, ordered Angie to move out of their house and in with her mother to receive support, and established visitation rights for Angie.

In March 2008, the Greek court modified its temporary order with respect to Evangelos and instituted a rotating custody arrangement. Under this plan, Nick had custody for April, June, and August 2008, while Angie had custody for May, July, and September 2008. During the months in which the parent did not have custody, they could communicate with Evangelos every Monday and Thursday afternoon and every second weekend, except during July and August "due to the absence of [Evangelos] in summer vacations."

On July 7, 2008, the court granted exclusive temporary custody to Nick and allowed Angie to visit the children three times per week and on weekends and holidays in the presence of her mother. This order provided that it would become effective on August 22, 2008, and that the March 2008 order establishing the rotating custody plan would remain in effect until that time.

In July 2008, while Angie had custody of Evangelos, she went on vacation with Evangelos for two weeks and "disappeared" toward the end of the month. Angie did not contact Nick during this time and she did not return Evangelos to Nick on August 1, as required by the March 2008 custody order. Nick later learned from the United States Department of State that Angie entered the United States on July 28, 2008.

On October 15, 2008, the Greek court held an evidentiary hearing, at which Nick was present but Angie was not. The court found that, during July, Nick only had the right of communication with Evangelos but that he would resume custody during August. On July 15, 2008, Angie, with the assistance of her mother, left her mother's house with Evangelos for an "unknown destination" without informing Nick and "depriv[ed Evangelos of] any sort of communication with his father." The court found that, as of the hearing date, Angie continued to withhold Evangelos from Nick. The court considered Angie's medical records, as well as the reports of two court-appointed experts confirming Angie's earlier diagnosis of "delirium disorder," and found that Angie was a danger to herself and her children, and "needs systematic psychiatric attendance and psychotherapy." The court again modified the custody order to grant exclusive custody to Nick and to allow visitation by Angie every Sunday under Nick's supervision.

On December 31, 2008, Greek officials sent Nick's Hague Convention application for the return of Evangelos to the United States Central Authority. In the application, Nick expressed concern over the "serious psychological and mental condition of [Angie] and the danger of the safety of [Evangelos]." At this time, Nick believed that Angie and Evangelos were located with Angie's relatives in Virginia.

After submitting his application to the United States Central Authority, Nick learned that, on October 31, 2008, Angie had represented to the Texas Department of Public Safety that she lived at 5115 Barlow Bend Lane in Katy. Nick also discovered a 2009 Michigan tax statement which reflected the same mailing address for Angie.

On February 9, 2009, Nick filed a petition for the return of the child in Fort

Bend County, Texas, pursuant to the Hague Convention and the federal International Child Abduction Remedies Act ("ICARA"). 42 U.S.C. §§ 11601–11611 (2006). Nick attached his Hague Convention application and the Greek court's October 15, 2008 custody order. Nick alleged that Evangelos had habitually resided in Greece for all five years of his life before Angie wrongfully removed him from Greece in July 2008. Nick sought the immediate return of Evangelos, as well as all costs and fees that he had incurred in his quest to recover Evangelos. Nick simultaneously requested that the trial court issue a writ of attachment, entitling law enforcement officials to take possession of Evangelos and return him to Nick. Nick requested personal service of the petition and the writ on Angie at her Katy address.

The trial court ordered the issuance of the writ of attachment on February 9, 2009. That same day, the Fort Bend County District Clerk's Office issued citation and the writ. The trial court also ordered a hearing on Nick's Hague Convention petition for 8:30 a.m. on February 12.

Kenny Eaves, a private process server, attempted to personally serve Angie at her Katy residence three times on February 10 and 11. Eaves reported that on the first occasion, the morning of February 10, he spoke to an adult female who informed him that Angie was not present, although two vehicles were parked at the house. Eaves also reported that he received no answer when he knocked on the evening of February 10 and the morning of February 11, although the same two vehicles were again present at the latter time. After this third unsuccessful attempt, Nick moved for alternative service under Texas

Rule of Civil Procedure 106 and attached Eaves's affidavit detailing his service attempts as evidence demonstrating the futility of personal service on Angie. Nick requested that the trial court authorize service on Angie either by leaving a copy of the petition, writ, and all related documents with anyone over the age of sixteen present at Angie's Katy residence or by affixing the documents to the front door.

On February 11, 2009, the trial court granted Nick's motion for alternative service and issued the following order:

> [The Court] ORDERS that service on ANGELIKI LIVANOS be effected by any person authorized by rule 103, Texas Rules of Civil Procedure, by leaving a copy of the citation with precept and pleadings and orders attached at 5115 Barlow Bend, Katy, Texas 77450, Fort Bend County, Texas, with anyone over sixteen years of age at that address or by taping it to the front door. Proof of service shall be made by the person executing the return, stating when the citation was served, on whom it was served, and where it was served.

The precept to serve Angie, filed with the clerk on February 12, 2009, reflected that Eaves effectuated service at 4:11 p.m. on February 11 "by delivering to a [female] over the age of 16 per 106 order" at the Katy residence. The precept also reflected that Eaves served Angie with the order for issuance of the writ of attachment, petition for the return of the child, order setting the hearing on the petition for February 12, and the order granting alternative service.

The trial court held a hearing on Nick's petition on the morning of February 12, 2009. Angie was not present, nor did counsel appear on her behalf. At the be-

ginning of the hearing, the trial court noted that its file contained the return of a precept served on Angie the previous day after the court authorized alternative service. During the hearing, the trial court admitted Nick's Hague Convention application and the October 15, 2008 Greek custody order. Nick testified that Evangelos had habitually resided in Greece since his birth and that the Greek court had granted Nick the exclusive right of custody over Evangelos. The trial court also admitted a spreadsheet documenting Nick's fees and expenses incurred in trying to locate Evangelos. This document indicated that Nick had spent a total of $68,300: (1) $6,500 on a hotel in Houston and roundtrip airfare between Houston and Greece; (2) $11,000 in private investigator fees in Virginia, Texas, and Illinois; and (3) $50,800 in attorney's fees in Texas, Virginia, and Greece. Nick clarified that the $25,800 spent on attorney's fees in Greece related solely to his Hague Convention application and not to the prior custody proceedings in the Greek court. Nick's counsel opined that the attorney's fees and expenses were reasonable and necessary, and that they are mandatory under a successful Hague Convention petition.

On February 12, 2009, the same day that Eaves filed the return of service and that the trial court held the hearing, the trial court signed a default order to return the child.[4] The order recited that Angie "did not appear, although given notice as required by law." The trial court found that Evangelos "habitually resided" in Greece, that Angie wrongfully removed Evangelos from Greece and continued to wrongfully retain him, and that Angie's actions constituted a "breach of rights of custody attributed to [Nick] under the law of Greece." The court ordered Angie to deliver Evangelos into Nick's possession and to pay $68,300 to Nick for "attorney's fees, necessary travel, and other expenses." The trial court also issued a writ of attachment, directing law enforcement officials to deliver Evangelos into Nick's custody.

Angie specially appeared on March 16, 2009, contending that the trial court lacked personal jurisdiction over her, as well as subject-matter jurisdiction over the case because Evangelos was not located in Texas at the time Nick filed his petition. Angie simultaneously filed an unverified motion for new trial, asserting that Nick did not properly serve her with citation. Angie amended her motion for new trial, subject to her special appearance, on April 24, 2009, and specified four ways in which service was defective. Angie also contended that the award of over $68,000 in fees and expenses was "inappropriate and exceed[ed] the scope of costs and fees permitted by ICARA."

On April 27, 2009, Angie moved the trial court to take judicial notice of adjudicative facts relating to the service of process upon her. The trial court granted this motion. Nick responded to Angie's motion for new trial and argued that he properly served Angie by complying with the trial court's order authorizing alternative service. Nick also argued that the trial court properly entered a default order on the same day that Eaves filed the proof of service because the Hague Convention and ICARA require expedited disposition of cases and allow for relaxation of the usual strict procedural rules. Nick also asserted

---

4. The trial court signed a default order, ordering Angie to return Evangelos to Nick. Throughout this opinion, we refer to this order as a default judgment.

874 ■

that a new trial was improper because, on March 23, 2009, a federal district court in Maryland ordered the return of Evangelos to Nick, after Evangelos was discovered in Child Protective Services custody in Maryland, and the trial court was required to give full faith and credit to that order.

The trial court denied Angie's motion for new trial, and this appeal followed.

## Proper Service of Process

■ In her first issue, Angie contends that the trial court never acquired personal jurisdiction over her due to Nick's failure to properly serve her, and therefore the default judgment against her is void. Angie identifies six specific defects in the service of Nick's Hague Convention petition: (1) the citation did not include the name of the petitioner; (2) the return of service was not properly verified; (3) the return of service was not on file with the clerk's office for the required ten days before rendition of a default judgment; (4) the return does not reflect that Nick served Angie with documents relating to the writ of attachment; (5) the process server did not endorse the return on the citation or attach the endorsement to the citation; and (6) the return does not specify the exact person served with process.

■ A claim of a defect in service of process challenges the trial court's personal jurisdiction over the defendant. *See Furst v. Smith*, 176 S.W.3d 864, 868 (Tex. App.-Houston [1st Dist.] 2005, no pet.). Whether the trial court had personal jurisdiction over a defendant is a question of law. *Id.* When a defendant has not answered, the trial court acquires jurisdiction over the defendant solely on proof of proper service. *Id.* (citing Tex.R. Civ. P. 107 (prohibiting rendition of default judgment

unless proof of proper service of process and return have been on file for ten days) and *Wilson v. Dunn*, 800 S.W.2d 833, 836 (Tex.1990)).

■ A default judgment cannot withstand a direct attack by a defendant who demonstrates that she was not served in strict compliance with the Texas Rules of Civil Procedure. *Hubicki v. Festina*, 226 S.W.3d 405, 408 (Tex.2007); *McGraw–Hill, Inc. v. Futrell*, 823 S.W.2d 414, 416 (Tex. App.-Houston [1st Dist.] 1992, writ denied). In a direct attack on a judgment, we do not presume the validity of issuance, service, or return of citation. *Uvalde Country Club v. Martin Linen Supply Co.*, 690 S.W.2d 884, 885 (Tex.1985); *Velasco v. Ayala*, 312 S.W.3d 783, 797 (Tex.App.-Houston [1st Dist.] 2009, no pet.). If the record does not affirmatively show strict compliance with the rules regarding service of citation, then service was invalid and the judgment is void. *Velasco*, 312 S.W.3d at 797; *see also Lytle v. Cunningham*, 261 S.W.3d 837, 840 (Tex.App.-Dallas 2008, no pet.) ("When the attempted service of process is invalid, the trial court acquires no personal jurisdiction over the defendant, and the default judgment is void."); *Marrot Commc'ns, Inc. v. Town & Country P'ship*, 227 S.W.3d 372, 376 (Tex. App.-Houston [1st Dist.] 2007, pet. denied) ("Virtually any deviation from the statutory requisites for service of process will destroy a default judgment."). Actual notice, without proper service, is not sufficient to invoke a trial court's jurisdiction to render a default judgment. *Wilson*, 800 S.W.2d at 836; *see also* Tex.R. Civ. P. 124 (providing that no judgment shall "be rendered against any defendant unless upon service, or acceptance or waiver of process, or upon an appearance by the defendant").

■ Texas Rule of Civil Procedure 107 provides that:

The return of the officer or authorized person executing the citation shall be endorsed on or attached to the same; it shall state when the citation was served and the manner of service and be signed by the officer officially or by the authorized person. The return of citation by an authorized person shall be verified....

....

Where citation is executed by an alternative method as authorized by Rule 106, proof of service shall be made in the manner ordered by the court.

....

No default judgment shall be granted in any cause until the citation, or process ... with proof of service ... as ordered by the court in the event citation is executed under Rule 106, shall have been on file with the clerk of the court ten days, exclusive of the day of filing and the day of judgment.

TEX.R. CIV. P. 107. Although Rule 107 allows for deviations in the form and content of the proof of service if the trial court has ordered an alternate method of service under Rule 106, as is the case here, the rule still requires that the proof of service be on file with the clerk for ten days before rendition of a default judgment. *Id.*

■ The return or proof of service must "affirmatively reveal[ ] that it has been in the district clerk's office for the required ten days," and, if not, "the default judgment rendered is void." *HB & WM, Inc. v. Smith,* 802 S.W.2d 279, 281 (Tex. App.-San Antonio 1990, no writ); *see also*

*Union Pac. Corp. v. Legg,* 49 S.W.3d 72, 78 (Tex.App.-Austin 2001, no pet.) (holding that failure to demonstrate return on file for required ten days before default "violates the strict-compliance requirement"); *Onyx TV v. TV Strategy Group, LLC,* 990 S.W.2d 427, 431 (Tex.App.-Texarkana 1999, no pet.).

Here, it is undisputed that Kenny Eaves, the private process server who served Angie, filed the return of service with the clerk on February 12, 2009, the same day that the trial court rendered a default judgment against Angie. This defect alone demonstrates that Nick did not strictly comply with the rules for service and return of citation.[5] Because of this failure, the trial court did not acquire personal jurisdiction over Angie, and the subsequent default judgment rendered against her is void.

We sustain Angie's first issue.

### Effect of Hague Convention

Although we hold that, under the Texas Rules of Civil Procedure, service upon Angie was invalid because the proof of service was not on file with the clerk for ten days before rendition of the default judgment, Nick contends that the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), which provides the notice requirements applicable to Hague Convention proceedings, does not require strict compliance with Rule 107. *See* UCCJEA, TEX. FAM.CODE ANN. §§ 152.001–.317 (Vernon 2008).

■ In 1980, various nations, including the United States and Greece,

5. We therefore do not address the remainder of the service defects that Angie alleges. We also do not address Angie's second issue, in which she contends that the trial court erred in denying her motion for new trial because the undisputed evidence reflected improper service and return of citation.

agreed to the Hague Convention on the Civil Aspects of International Child Abduction ("HCCAICA") to "protect children internationally from the harmful effects of their wrongful removal or retention and to establish procedures to ensure their prompt return to the State of their habitual residence." Hague Convention on Civil Aspects of International Child Abduction, pmbl., Oct. 25, 1980, T.I.A.S. No. 11670, 1434 U.N.T.S. 48; *In re J.G.*, 301 S.W.3d 376, 378–79 (Tex.App.-Dallas 2009, no pet.); *In re A.V.P.G.*, 251 S.W.3d 117, 122 (Tex.App.-Corpus Christi 2008, no pet.). The purposes of the Hague Convention include (1) preserving the "pre-abduction status quo custody arrangements" between the parties and (2) deterring a parent from "crossing intentional boundaries in search of a more sympathetic court." *A.V.P.G.*, 251 S.W.3d at 122 (citing *Lops v. Lops*, 140 F.3d 927, 936 (11th Cir.1998)). A court hearing a Hague Convention petition under the HCCAICA "has the authority to determine the merits of an abduction claim, but not the merits of the underlying custody claim." *Id.* (citing *Blondin v. Dubois*, 189 F.3d 240, 245 (2d Cir.1999)). The premise of the Hague Convention is that the country in which the child has his "habitual residence" is in the best position to determine questions of parental custody and access. *Id.* (citing *Croll v. Croll*, 229 F.3d 133, 137 (2d Cir.2000)).

In 1988, Congress passed the International Child Abduction Remedies Act ("ICARA") to establish procedures for the implementation of the HCCAICA in the United States. *See* 42 U.S.C. § 11601(b)(1) (2006); *J.G.*, 301 S.W.3d at 379. ICARA gives concurrent original jurisdiction to state and federal district courts to hear the Hague Convention proceedings. 42 U.S.C. § 11603(a); *J.G.*, 301 S.W.3d at 379. To commence judicial proceedings under ICARA, the petitioner may petition for the return of a child who has been wrongfully removed from the child's habitual residence in "any court which has jurisdiction ... and which is authorized to exercise its jurisdiction in the place where the child is located at the time the petition is filed." 42 U.S.C. § 11603(b); *J.G.*, 301 S.W.3d at 379. A petitioner establishes wrongful removal by proving by a preponderance of the evidence that the removal of the child was "made in breach of the rights of custody of the petitioner under the law of the country in which the child habitually resided immediately before the removal." *J.G.*, 301 S.W.3d at 379; 42 U.S.C. § 11603(e)(1)(A). The respondent then has the opportunity to establish certain affirmative defenses to the return of the child provided for in the HCCAICA. 42 U.S.C. § 11603(e)(2).

When a petitioner files such a Hague Convention petition, notice "shall be given in accordance with the applicable law governing notice in interstate child custody proceedings." *Id.* § 11603(c). In Texas, the UCCJEA controls interstate child custody proceedings. *See* TEX. FAM.CODE ANN. § 152.106 (Vernon 2008). Under the UCCJEA, before a trial court can make a child custody determination, "notice and an opportunity to be heard in accordance with the standards of Section 152.108 must be given to ... any person having physical custody of the child." *Id.* § 152.205(a). Section 152.108 provides that:

(a) Notice required for the exercise of jurisdiction when a person is outside this state may be given in a manner prescribed by the law of this state for service of process or by the law of the state in which the service is made. Notice must be given in a manner reasonably calculated to give

actual notice but may be by publication if other means are not effective.

(b) Proof of service may be made in the manner prescribed by the law of this state or by the law of the state in which service is made.

*Id.* § 152.108(a)-(b) (Vernon 2008). Under this section, a petitioner may serve the respondent in accordance with either the Texas requirements for service of process or the requirements of the state in which the respondent is actually served.[6] *Id.* Regardless of which option the petitioner chooses, the petitioner must give notice "in a manner reasonably calculated to give actual notice" of the suit. *Id.*

Nick contends that, under the UCCJEA, "it is sufficient to serve a person with process in any manner reasonably calculated to give actual notice. That notice may be strictly in accordance with Texas law prescribing the manner of service, but strict compliance is not mandated. Thus, the only mandatory requirement under the UCCJEA is that notice be given in a manner reasonably calculated to give actual notice." Nick's interpretation misconstrues section 152.108. The Texas Legislature intended to give petitioners the option to follow either Texas notice requirements or the requirements of the jurisdiction in which the petitioner actually serves the respondent. *See* House Comm. on Juvenile Justice & Family Issues, Bill Analysis, Tex. H.B. 797, 76th Leg., R.S. (1999) (Section 152.108 "[a]uthorizes notice required for the exercise of jurisdiction to be given in a manner prescribed by the law of this state for service of process or by the law of the state in which the service is made."). Section 152.108 does not allow

a petitioner to forego strict compliance with Texas notice requirements as long as the method used is reasonably calculated to give actual notice to the respondent. Instead, the petitioner must follow either Texas's notice requirements or the requirements of the jurisdiction in which the respondent is served, *and* the petitioner must ensure that the respondent is served in a manner reasonably calculated to give actual notice. *See* TEX. FAM.CODE ANN. § 152.108(a).

In asserting that his actions complied with section 152.108, Nick ignores subsection (b), which provides that proof of service may be made "in the manner prescribed by the law of [Texas] or by the law of the state in which the service is made." TEX. FAM.CODE ANN. § 152.108(b). In Texas, proof of service is governed by Rule 107, which requires, among other things, that the proof of service be on file with the clerk's office for at least ten days before rendition of a default judgment. TEX.R. CIV. P. 107. Contrary to Nick's contentions, therefore, the UCCJEA requires compliance with Rule 107.

Nick further contends that applying the "rigid time frame" of Rule 107's ten-day requirement "would work at cross-purposes with the object of the Hague Convention by giving parents a guaranteed opportunity to flee the court's jurisdiction." Nick cites several federal cases and cases from other states for the proposition that when a respondent parent is a flight risk, the court may hold a hearing on the petition and order the return of the child as soon as possible. *See, e.g., Zajaczkowski v. Zajaczkowska,* 932 F.Supp. 128, 129, 132 (D.Md.1996) (noting that "prompt ac-

---

**6.** Here, Nick served Angie in Texas, so we apply Texas law in determining whether Nick complied with the notice requirements.

tion" is "at the heart of the [Hague] Convention" and deciding to treat Hague Convention petitions as applications for writs of habeas corpus); *McCullough v. McCullough*, 4 F.Supp.2d 411, 414–15 (W.D.Pa. 1998) (issuing warrant in lieu of writ of habeas corpus for children while Hague Convention petition remained pending to allow respondent to obtain counsel for hearing three days later). According to Nick, the Hague Convention's emphasis on expediency in returning wrongfully removed children to their rightful custodial parent abrogates Rule 107's requirement that proof of service be on file with the clerk's office for ten days before rendition of a default judgment.

Each of the cases cited by Nick provides for an expedited hearing on the merits of the Hague Convention petition, instead of following the slower timelines of the federal and state rules of civil procedure. In *Zajaczkowski*, the United States District Court of Maryland determined that, given the premium on the expeditious resolution of Hague Convention controversies, it would treat Hague Convention petitions like federal applications for writs of habeas corpus and would "hear evidence and argument in summary fashion and decide the case at the hearing, unless, for good cause shown, it finds reason for delay."[7] *Zajaczkowski*, 932 F.Supp. at 132. In *Antonio v. Bello*, the United States District Court for the Northern District of Georgia held an ex parte hearing in which it ordered federal marshals to take custody of the child and to serve the respondent with the Hague Convention petition. *Antonio v. Bello*, No. Civ.A.1:04–CV–1555–T, 2004

WL 1895127, at *1 (N.D.Ga. June 7, 2004) (not designated for publication). At a later hearing, the court released the child to the petitioner and refused to postpone the hearing on the merits of the Hague Convention petition, scheduled for three days later, due to the court's crowded trial docket, which would require waiting at least a month to hold the hearing if postponed. *Id.* The court held the hearing as scheduled, and both parents were present and represented by counsel. *Id.*

Similarly, in *Ciotola v. Fiocca*, an Ohio Court of Common Pleas disregarded an Ohio state law requiring at least twenty days' notice before a hearing in parental proceedings and denied a motion for continuance, ruling that mail service three days before the hearing was sufficient when the record reflected that the respondent had actual notice of the impending Hague Convention petition for at least three months before filing and that counsel for the parties had corresponded regarding the petition. *Ciotola v. Fiocca*, 86 Ohio Misc.2d 24, 684 N.E.2d 763, 770–71 (1997); *see also Wipranik v. Super. Ct. of Los Angeles*, 63 Cal.App.4th 315, 73 Cal. Rptr.2d 734, 738 (1998) (granting request to shorten time before hearing and finding reasonable notice when counsel had ten days to prepare for hearing). None of these cases involved a default judgment. In each case, despite either the shortened time period before the hearing or the relaxed notice requirements, the respondent appeared and participated in the hearing on the merits of the petition. Because the respondents appeared in these cases, personal jurisdiction concerns arising out of

---

7. One state appellate court in Washington declined to follow *Zajaczkowski*, noting that other federal courts do not treat Hague Convention petitions as applications for writs of habeas corpus and observing that "significant procedural differences" exist between state and federal courts. *In re Marriage of Henches*, No. 41887–4–I, 2000 WL 1667394, at *3 (Wash.Ct.App. Nov. 6, 2000) (not designated for publication).

improper service were not implicated. Nick has not cited to any case elevating the "prompt return" and expeditious action requirements of the Hague Convention and ICARA over state procedural rules that must be followed when rendering a default judgment.

Nick is understandably concerned that, upon receiving service of a Hague Convention petition, a parent who has already fled the habitual residence of the child once will flee with the child again, instead of using the judicial process to avail herself of the Convention's affirmative defenses to the return of the child. ICARA, however, provides a solution to this dilemma by allowing a court exercising jurisdiction over a Hague Convention petition to "take or cause to be taken measures under Federal or State law, as appropriate, to protect the well-being of the child involved or to prevent the child's further removal or concealment before the final disposition of the petition." 42 U.S.C. § 11604(a). The trial court may not order the removal of the child from a person having physical control over the child "unless the applicable requirements of state law are satisfied." *Id.* § 11604(b).

In *McCullough*, the petitioner filed his Hague Convention petition and a "warrant in lieu of a writ of habeas corpus" for the return of his children before serving the petition on the respondent because he considered the mother to be a flight risk. *McCullough*, 4 F.Supp.2d at 413. The United States District Court for the Western District of Pennsylvania noted that Pennsylvania procedural law authorized

this relief and the court issued a warrant for the children and directed the federal marshals to serve the respondent with a copy of the warrant and the petition. *Id.* at 414–15. The mother, who was not represented by counsel, brought the children to the court for a hearing on the petition the next day. *Id.* at 416. The trial court released the children into the father's custody and rescheduled the hearing for three days later so the mother could obtain counsel. *Id.; see also Fink v. Walker,* No. 06–cv–807–JPG, 2007 WL 114005, at *2–5 (S.D.Ill.2007) (not designated for publication); *Alonzo v. Claudino,* No. 1:06CV00800, 2007 WL 475340, at *1 (M.D.N.C.2007) (not designated for publication); *cf. Tsalafaos v. Tsalafaos,* 34 F.Supp.2d 320, 321 (D.Md.1999) (denying petition for warrant in lieu of habeas corpus because issuance of warrant not authorized by Maryland law in particular circumstances).

The UCCJEA, for example, provides for two mechanisms through which a Hague Convention petitioner can obtain immediate physical custody of the child pending the trial court's determination of the merits of the petition. Family Code section 152.308 allows for expedited enforcement of a child custody determination if a petitioner files a verified petition stating, among other requirements, the jurisdictional basis for the prior custody determination and whether the petitioner seeks any relief other than immediate physical custody of the child.[8] *See* Tex. Fam.Code Ann. § 152.308(a)-(b) (Vernon 2008). Upon the filing of a petition meeting the

---

8. We note that Nick did not file a verified petition, nor did his petition include the specific requirements of section 152.308(b). *See* Tex. Fam.Code Ann. § 152.308(a)-(b) (Vernon 2008). Because Nick's petition does not meet these requirements, it does not qualify as a petition for expedited enforcement of a child custody determination. *See In re S.J.O.B.G.,* 292 S.W.3d 764, 786 (Tex.App.-Beaumont 2009, no pet.) (holding that petition cannot be considered under section 152.308 when it does not meet the statutory requirements).

requirements of this section, the trial court "shall issue an order directing the respondent to appear in person with or without the child at a hearing and may enter any order necessary to ensure the safety of the parties and the child. The hearing must be held on the next judicial day after service of the order unless that date is impossible." *Id.* § 152.308(c). The trial court's order must state the time and place of the hearing and inform the respondent that the court will award immediate physical custody to the petitioner unless the respondent appears and establishes certain defenses. *Id.* § 152.308(d).

A petitioner may also, at the time he files a petition seeking enforcement of a custody determination, file a "verified application for the issuance of a warrant to take physical custody of the child if the child is imminently likely to suffer serious physical harm or be removed from [Texas]." *Id.* § 152.311(a) (Vernon 2008). If the court determines, based upon the testimony of the petitioner or another witness, that the child is imminently likely to be removed from the state, it may issue a warrant to take physical custody of the child and hold a hearing on the petition the next judicial day after execution of the warrant, if possible. *Id.* § 152.311(b). The warrant must state the factual basis for the trial court's conclusion that the child is likely to be removed from the jurisdiction, direct law enforcement officers to take immediate physical custody, and provide for placement of the child "pending final relief." *Id.* § 152.311(c). Both this provision and the provision for expedited enforcement provide that the Hague Convention petition is to be served on the respondent at the time the warrant

or expedited petition is executed. *Id.* §§ 152.309, 152.311(d).

The UCCJEA, therefore, provides remedies for a petitioner to thwart the further removal of the child from Texas pending the determination of the Hague Convention petition. If a petitioning parent believes that the respondent is likely to attempt to flee the jurisdiction before the trial court determines the merits of the Hague Convention petition, he can seek this extraordinary relief either before serving the other parent with the Convention petition or simultaneously with service.[9]

 We conclude that the UCCJEA, which governs the notice and service requirements for Hague Convention proceedings pursuant to ICARA, requires the petitioner to strictly comply with the proof of service requirements of either Texas or the jurisdiction in which the respondent is served. In this case, Nick needed to strictly comply with the Texas Rules of Civil Procedure, specifically, Rule 107, which mandates that the proof of service be on file with the clerk's office for ten days before rendition of a default judgment. Neither the Hague Convention nor ICARA, with their emphasis on expedited procedures and prompt return of the child, abdicates this requirement. We therefore hold that, because Nick did not strictly comply with Rule 107, the trial court lacked personal jurisdiction to render a default judgment against Angie, and the default judgment is void.

We sustain Angie's third issue.

## Conclusion

We reverse the default order and remand the case to the trial court for further

---

9. Nick himself took advantage of a similar remedy by requesting that the trial court issue a writ of attachment for Evangelos when he filed his Hague Convention petition.

proceedings consistent with this opinion.[10]

---

**10.** Pursuant to Texas Rule of Civil Procedure 123, no new service of process is necessary. TEX.R. CIV. P. 123 ("Where the judgment is reversed on appeal ... because of defective service of process, no new citation shall be issued or served, but the defendant shall be presumed to have entered his appearance to the term of the court at which the mandate shall be filed."); *see also HB & WM, Inc. v. Smith*, 802 S.W.2d 279, 282 (Tex.App.-San Antonio 1990, no writ) (holding that, by appealing from default judgment, appellants personally appeared in case and further citation therefore unnecessary).