*317
 
 Opinion
 

 FUKUTO, Acting P. J.—
 

 I. Factual and Procedural History
 

 Petitioner Yona Wipranik and real party Sheldon Wipranik are citizens of the United States. They were married on November 27, 1984, in Los Angeles, California. The minor child, Doron Wipranik, was bom on February 21, 1989, in San Francisco, California, and also is an American citizen. Shortly after the child’s birth, Yona and Sheldon Wipranik began residing in Malibu, California.
 

 In 1992, Sheldon Wipranik initiated dissolution proceedings in Los Angeles County. Although the couple reconciled, the dissolution proceedings were never dismissed. In July 1994, after their reconciliation, the Wipraniks moved to Israel with their son. The minor completed both first and second grades in Israel, and was registered to begin third grade on September 1, 1997. However, on August 29, 1997, Yona Wipranik returned to the United States with the minor child of the marriage.
 

 On September 3, 1997, Sheldon Wipranik filed a “Request for Return of Abducted Children” with the Israeli Central Authority.
 

 On October 6, 1997, Yona Wipranik filed an order to show cause for child custody.
 

 On October 17, 1997, Sheldon Wipranik, taking the position that the child had been abducted from his “habitual residence," filed in the superior court in California (where the dissolution matter was still pending), a petition under the 1980 Hague Convention on the Civil Aspects of International Child Abduction (Hague Convention) asking the court to make a finding that the child’s habitual residence was located in Israel, and asking for the return of the child to Israel.
 
 [1]
 

 Yona Wipranik opposed the Hague Convention petition, taking the position that the child’s habitual residence was in California. In support of her
 
 *318
 
 position, she offered her declaration in lieu of personal testimony pursuant to Code of Civil Procedure sections 2009 and 2015.5, California Rules of Court, rule 1225,
 
 Reifler
 
 v.
 
 Superior Court
 
 (1974) 39 Cal.App.3d 479 [114 Cal.Rptr. 356], and
 
 In re Marriage of Stevenot
 
 (1984) 154 Cal.App.3d 1051 [202 Cal.Rptr. 116]. Yona Wipranik declared, in essence, that it was always understood that her trip with the minor to Israel was intended to be temporary—first in order for her to care for her terminally ill mother, and then, after her mother’s death, for the minor to remain long enough to learn Hebrew, get to know his Israeli relatives and discover his heritage. Yona Wipranik also declared that since August 1994, Sheldon Wipranik has divided his time between Israel and the United States, and that he spends the greater portion of his time in California running the apartment business and residing in the Malibu family residence. Yona Wipranik also noted that although she has a number of relatives in Israel, Sheldon Wipranik has no relatives in that nation.
 

 Alternatively, Yona Wipranik requested that if the court found that Israel was the child’s habitual residence, that the court find that the removal of the child from Israel was not wrongful because an exception to the return of the child existed pursuant to article 13(b) of the Hague Convention. Article 13(b) allows a court to deny a request for an order returning the child to his habitual residence if the court finds there is a grave risk that the child’s return would expose him or her to physical or psychological harm or otherwise place the child in an intolerable situation. In support of her position that the child should remain in California, Yona Wipranik declared that while she resided with Sheldon Wipranik in Israel, he used marijuana on a daily basis, drank excessively, was often absent from the home, and physically and verbally abused her and the child.
 

 In his reply to Yona Wipranik’s opposition, Sheldon Wipranik claimed that the move to Israel was intended to be permanent. He stated that the family home in Malibu had been rented on a year-to-year lease except for one room which the family kept for those occasions when they would visit Los Angeles. He also stated that in making the move two containers of personal property were shipped to Israel, one in 1994, and one in 1995. Included was an automobile. Sheldon Wipranik admitted to the occasional use of marijuana, and to an occasional social drink. He denied that he absented himself from the family home. He admitted that he would on occasion raise his voice, but denied that he had ever physically abused his wife or his son.
 

 On October 28, 1997, the superior court found, “based upon the declarations and examination of [Yona Wipranik], that the child’s habitual residence for the last three years preceding the child’s removal was the state of
 
 *319
 
 Israel.” The court also found that Sheldon Wipranik was exercising custodial rights over the child at the time of the child’s removal from Israel, and that Sheldon Wipranik did not consent to the removal of the child. The court also found that Yona Wipranik failed to meet her burden of proof with respect to the Hague Convention article 13(b) issue. The court concluded that “the pourts in Israel are empowered to protect the interests of the minor child. That’s the proper place for those issues to be addressed.” The court granted Sheldon Wipranik’s Hague Convention petition, and ordered Yona Wipranik to return the child to Israel.
 

 On October 31, 1997, Yona Wipranik filed a petition for writ of mandate in this court, seeking review of the superior court’s order. She claimed, among other things, that she had not had a fair opportunity to support her opposition to the Hague Convention petition with the proper evidence.
 

 On October 31, 1997, in order to have an opportunity to consider the petition for writ of mandate, we issued an order temporarily staying the October 28, 1997, order issued by the superior court.
 

 On November 4, 1997, Sheldon Wipranik filed opposition to the petition for writ of mandate.
 

 On November 25, 1997, we issued an “alternative writ of mandate,” instructing the superior court to either vacate its order of October 28, 1997, granting Sheldon Wipranik’s Hague Convention petition, and directing Yona Wipranik to return to the nation of Israel with the minor child, and issue a new and different order setting for rehearing the issue of whether the child’s habitual residence is located in Israel or California, or to show cause before this court why a peremptory writ of mandate ordering the superior court to do so should not issue. Oral argument, in case the superior court declined the election to vacate its order and set the matter for rehearing, was set for February 23, 1998. Later, the date was changed to February 24, 1998. We advised the parties that in the event the superior court declined to take the election, Sheldon Wipranik, should he wish to do so, could file a written return to the petition for writ of mandate by January 5, 1998, and that Yona Wipranik could file a reply on or before January 28, 1998.
 

 The superior court elected not to set aside its order of October 28, 1997, and to set the Hague Convention petition for rehearing.
 

 On January 5, 1998, counsel for Sheldon Wipranik filed a document entitled “motion to discharge alternate
 
 (sic)
 
 writ of mandate.” We were
 
 *320
 
 advised that on December 15, 1997, the “Israeli Family Court of Tel-Aviv and Central Districts . . . conducted a hearing, reviewed the evidence submitted to it and . . . ruled that Israel is the Habitual Residence of the minor child.” We were also advised that “The Israeli Decision shows, at Paragraph 9, that Yona Wipranik took part in the proceedings.” We determined that a response from Yona Wipranik was required since it appeared that her participation in the Israeli proceedings had rendered her petition for writ of mandate moot.
 

 Before we could issue an order directing Yona Wipranik to respond to Sheldon Wipranik’s motion to discharge the alternative writ of mandate, we received, on January 7, 1998, a letter from Sheldon Wipranik’s attorney. He advised that his letter of January 5, 1998, contained an inaccuracy because of a translation problem. The January 5, 1998, letter should have read as follows: “The Israeli Decision shows, at Paragraph 9, that Yona Wipranik did not take part in the proceedings.” (Emphasis added.)
 

 Upon receipt of Sheldon Wipranik’s letter correcting his earlier letter, we determined that no response from Yona Wipranik to the motion to discharge the alternative writ was necessary since the matter remained in essentially the same posture as when we received the petition for writ of mandate on October 31, 1997. Yona Wipranik still claimed that California was the child’s habitual residence, and Sheldon Wipranik still claimed that the child’s habitual residence was located in Israel.
 

 II. Issue to Be Decided
 

 The issue to be determined is whether the matter should be returned to the superior court so that it can conduct a rehearing on Sheldon Wipranik’s Hague Convention petition.
 

 III. Discussion
 

 On December 1, 1991, the Hague Convention entered into force between the United States and Israel. The International Child Abduction Remedies Act of April 29, 1988, implemented the Hague Convention for the United States. (42 U.S.C. § 11601 et seq.) The Hague Convention constitutes a treaty of the United States within the meaning of article II of the Constitution.
 

 “A fundamental purpose of the Hague Convention is to protect children from wrongful international removals or retentions by persons bent on
 
 *321
 
 obtaining their physical and/or legal custody.” (Hague Intemat. Child Abduction Convention; Text and Legal Analysis, 51 Fed. Reg. 10504 (Mar. 26, 1986).)
 

 The International Child Abduction Remedies Act authorizes either a federal or a state court in which a child is located to issue an order requiring the return of that child to another signatory nation if the court first determines that the child was a habitual resident of the other nation, and that the child was wrongfully removed from the nation.
 

 “A curious feature of the [Hague] Convention is that although the term ‘habitual residence’ is a critical predicate term it is undefined in the Convention. In addition, because Hague Convention proceedings are relatively infrequent there is only a small body of case law in the United States that has sought to define the term and its applicability to a variety of factual situations. As noted by one court, the apparent intent is for the concept to remain fluid and fact based, without becoming rigid.”
 
 (David B.
 
 v.
 
 Helen O.
 
 (1995) 164 Misc.2d 566 [625 N.Y.S.2d 436, 439].)
 

 Notice requirements under the Hague Convention are determined by 42 United States Code section 11603(c) which provides that “Notice of an action brought under subsection (b) of this section shall be given in accordance with the applicable law governing notice in interstate child custody proceedings.” Notice in interstate proceedings in California is given pursuant to Family Code section 3404 which provides that “Before making a decree . . .
 
 reasonable notice and opportunity to be heard
 
 shall be given to the contestants, any parent whose parental rights have not been previously terminated, and any person who has physical custody of the child. If any of these persons is outside this state, notice and opportunity to be heard shall be given pursuant to Section 3405.” (Italics added.) The question, therefore, is whether Yona Wipranik had “reasonable” notice of the hearing on the petition. The record shows that the minor child was removed from Israel to California by Yona Wipranik on August 29, 1997. On October 6, 1997, Yona Wipranik filed an order to show cause in the dissolution action. On October 16, 1997, counsel for Yona Wipranik was served with Sheldon Wipranik’s Hague Convention petition. Yona Wipranik claims that on October 17, 1997, over her “strenuous objection,” Judge Paul Gutman granted Sheldon Wipranik’s request to shorten time for the hearing on his Hague Convention petition. At the same time, Judge Gutman signed an order staying further custody proceedings in the dissolution action, and set the Hague Convention petition for hearing on October 28, 1997. On October 27, 1997, Yona Wipranik executed and filed a responsive declaration to the
 
 *322
 
 Hague Convention petition. On October 28, 1997, the Hague Convention petition was heard by Judge Richard Montes.
 

 What the record reflects is that Yona Wipranik was given about 10 days within which to prepare for the Hague Convention hearing. She claims that this was an insufficient amount of time. She notes that the “short time period was further exacerbated by the fact that the Jewish Sabbath fell on two of those days and a third was a Jewish holiday.” Yona Wipranik claims that she “is an observant Jew who does not do work on the Sabbath or holidays.” According to Yona Wipranik, she did not have time “to obtain affidavits from any of the numerous friends, neighbors or relatives in Israel who were aware that it was always planned that her stay in Israel would be temporary and that she and the minor child always considered California their home.”
 

 In opposition to this petition, counsel for Sheldon Wipranik declared under penalty of perjury that Yona Wipranik was not present on October 17, 1997, during the hearing on Sheldon Wipranik’s request for an order shortening time for hearing on his Hague Convention petition. Counsel further stated that “[a]t no time during [the hearing] was any objection, explicit or implicit, made to the hearing date of 28 Oct 1997 by any person,” including Yona Wipranik’s attorney. Counsel claims that the court “set the matter for hearing at a time mutually agreed upon by counsel for both parties,” and that the October 28, 1997, date “was selected by the court (which had suggested an earlier date) based upon the unavailability” of Sheldon Wipranik’s counsel until October 27, 1997, “due to a previous speaking engagement in Milan, Italy.” Counsel for Sheldon Wipranik also declared that at no time during the October 28, 1997, hearing on the Hague Convention petition did counsel for Yona Wipranik “raise an objection, implicit or explicit, to the hearing date of 28 Oct 1997 or to the notice he had received for the hearing date of 28 Oct 1997.” A review of the reporter’s transcript of the October 28, 1997, hearing shows that at no time during the hearing was any objection made by counsel for Yona Wipranik with respect to improper notice. Nor was a continuance requested in order to present the court with additional evidence concerning the “habitual residence” issue.
 

 Here, Judge Gutman, sua sponte, set the matter for hearing on October 28, 1997. Although Yona Wipranik claims her counsel “strenuously objected” to the setting of the hearing on that date, Yona Wipranik has failed to establish a record indicating that this is so. Counsel for Sheldon Wipranik declared under penalty of perjury that no such objection was made. Counsel for Yona Wipranik has filed no such declaration. This being so, we conclude that no objection was made. Even if we assume that an objection was made, the
 
 *323
 
 record shows that Yona Wipranik filed a response to the petition, and that during the hearing, she made no request for a continuance. Instead, she submitted a declaration wherein she stated that neither she nor her husband ever intended to permanently reside in Israel. Relying on Code of Civil Procedure sections 2009 and 2015.5, California Rules of Court, rule 1225,
 
 Reifler
 
 v.
 
 Superior Court, supra,
 
 39 Cal.App.3d 479, and
 
 In re Marriage of Stevenot, supra,
 
 154 Cal.App.3d 1051, Yona Wipranik specifically authorized the court to determine the Hague Convention petition upon her declaration alone. More importantly, she did not request additional time to present evidence designed to bolster her claim that the child’s habitual residence was in California. Under these circumstances, we cannot conclude that Yona Wipranik had an insufficient amount of time within which to prepare her opposition, or that she was denied a fair hearing.
 

 Here, the issue was whether a child would reside in California or Israel. The fundamental purpose of the Hague Convention is to protect children from wrongful international removals or retentions. To achieve the purpose of the Convention requires the balancing of two competing policies. The first is to make a decision in a timely fashion so that the child, should it be determined that his habitual residence is in another country, can be returned to that nation. The other is to afford the parties to the petition a reasonable amount of time within which to present their evidence with respect to the habitual residence and article 13(b) issues. The record reflects that the essence of Yona Wipranik’s claim, i.e., that the parties never intended to establish Israel as their permanent residence, and that Sheldon Wipranik was abusive toward the child, was before the court, and that Yona Wipranik sought no continuance in order to bolster her evidence with respect to these issues. We conclude, therefore, that the court did not abuse its discretion in rendering a decision based upon the evidence presented.
 

 As to whether the court erred in finding that Israel is the child’s habitual residence, the record contains sufficient evidence from which such a decision could be made. Yona Wipranik contends that the court failed to consider the evidence showing that she and her husband never intended to permanently reside in Israel. The record does not support her claim. The record shows that in making its decision that the child’s habitual residence was in Israel, the court was swayed by the evidence showing that the child resided in Israel for three years, attended school there for two years, and had family and friends in Israel. The record also reflects, however, that the court considered Yona Wipranik’s claim that she and her husband never intended to reside in Israel, and rejected the contention.
 

 
 *324
 
 IV. Disposition
 

 Accordingly, the writ is denied. The temporary stay is vacated. The parties are to bear their own costs.
 

 Nott, J., and Zebrowski, J., concurred.
 

 [1]
 

 On September 3, 1997, prior to filing his petition here, Sheldon Wipranik filed a “Request for Return of Abducted Children” with the Israeli Central Authority. Although unclear, it does not appear he pursued the request until after we issued an alternative writ in October 1997. The record reflects that on December 15, 1997, the Israeli Family Court of Tel Aviv and Central Districts issued an order finding that Israel is the habitual residence of the minor child. The record also indicates that Yona Wipranik did not participate in these proceedings.