**In re the Application of Sonja E. MORRIS, Plaintiff/Petitioner,**

**and**

**Gerard J. Morris, Defendant/Respondent,**

**and Concerning**

**Sean Gerard Morris, Minor Child.**

**Civil Action No. 99–B–672.**

United States District Court, D. Colorado.

Aug. 30, 1999.

Deborah Read, Milan & Malara, P.C., Denver, CO, for plaintiff.

Timothy Walker, Gerald W. Young, Cox Mustain–Wood Walker & Schumacher LLC, Littleton, CO, for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

BABCOCK, District Judge.

This action is brought pursuant to the 1980 Hague Convention on the Civil Aspects of International Child Abduction, 51 Fed.Reg. 10494 (the "Convention"), and the Federal legislation facilitating the Convention in the United States, the International Child Abduction Remedies Act, Public Law 100–300 at 42 U.S.C. § 11601, *et seq.* Pending before me is a petition filed by the Petitioner, Sonja E. Morris ("Mother"), for the return of the minor child, Sean Gerard Morris (the "child"), to Switzerland pursuant to the Convention. The matter was heard on August 23 and 24, 1999. I heard the testimony of witnesses, arguments of counsel, and reviewed all the evidence. For the reasons set forth below, and pursuant to the Convention, I find that Colorado is the "habitual residence" of the child, and therefore I deny the petition.

The Convention and its federal implementing legislation give this Court jurisdiction over the parties and subject matter of this case.

## I.

The Mother and the Respondent ("Father") met in Munich, Germany, in 1989. From June 1990 to August 1998, they lived together in the United States. The parties were married in Ireland on May 27, 1994. One child was born of the marriage on April 1, 1997, Sean Gerard Morris. (Defendant's Exhibit A6). The child was born in Porter Hospital in Denver, Colorado, and has citizenship in the United States, Ireland, and Germany.

The Father has lived in the United States for 18 years and is a naturalized citizen. He is also a citizen of Ireland. The Mother is a citizen of Germany, and her parents and Aunt reside there. Neither the Mother, the Father, nor the minor child have Swiss citizenship or Swiss passports. The Mother and the Father have filed United States and Colorado tax returns during the marriage. Further, the Mother and the Father each maintain a Colorado driver's license, and the Father is a registered voter in Colorado.

The Father has been a professor at Metropolitan State College of Denver ("Metro") since 1991. He is now a tenured full professor. In December 1997, he applied for and was awarded a 10 month sabbatical leave and a one-term guest teaching appointment at the University of Basel, Switzerland, from October 1998 through March 1999. (Defendant's Exhibit A9). Upon accepting the sabbatical, the Father signed a contract with Metro agreeing to resume his normal teaching position upon his return. (Defendant's Exhibit A12). In the event the Father did not return from his Swiss teaching position, he agreed to repay Metro the partial salary he would receive during the leave period. (Defendant's Exhibit A12).

The Mother and Father sold their home prior to leaving Colorado with the inten-

tion of returning and purchasing a larger home. The parties' furniture and other household items were stored in Denver. The Mother, in a letter to her Denver employer, Founders Funds, stated that she intended to return to her position when she and the Father returned to Colorado in August 1999:

> I regret to inform you that I am resigning my position as Investor Service Representative as of July 20. My husband has accepted a position overseas while on sabbatical leave from his current institution.
>
> Since I really enjoy working at Founders I would greatly appreciate the opportunity to resume my position upon my return to Denver in August 1999.

(Defendant's Exhibit Q).

At the time the parties left for Switzerland, the Father fully intended to return to Colorado with his wife and child at the conclusion of the sabbatical. He was of the distinct belief that the Mother also intended to return to Colorado to purchase a home and to resume her employment. However, the Mother testified at trial and in deposition that at the time she left Colorado, although she had written a letter to her employer at Founders Funds expressing her intention to return, she had no fixed intention to stay in Colorado. She explained that she never burns bridges and always keeps opportunities open. Her testimony was that she didn't believe the letter represented a firm commitment. I do not find her testimony credible. Instead, I find and conclude that at the time the parties left Colorado for Switzerland, they had a shared, settled intention to return to Colorado with the child.

While in Switzerland, the University of Basel filled out necessary documents for the Father to obtain a resident work permit which was valid through March 1999. The Father neither applied for, nor intended to pursue, permanent employment at the University of Basel or anywhere else in Europe. While in Switzerland, the Father completed paperwork relating to his Fall 1999 teaching position with Metro. He submitted to Metro his 1998 Annual Evaluation document together with his teaching, research, and service goals for 1999. He also submitted his Five Year Comprehensive Development Plan as required of all Metro faculty. Further, the Father was in E-mail contact with his colleague at Metro, Professor Susan Helms, a witness at this hearing, concerning the courses he would teach in the upcoming Fall. (Defendant's Exhibit A34).

The Father entered into a three-month lease for a guesthouse in Austria from April 1, 1999, to July 1, 1999, because the parties intended to vacation there after the sabbatical ended on March 31, 1999. After Austria, the parties intended to travel in Ireland until their return to the United States and the Father's resumption of his teaching duties at Metro.

In November 1998, the marriage began to weaken and the Mother became less interested in vacationing in Austria. The Father asked the Mother whether she intended to return home to Colorado. She answered, "I do not know." At trial, the Father testified that when he juxtaposed this vague answer against their prior, settled plan to come back to Colorado, he assumed that she had already decided to stay in Europe. His assumption is supported by Frau Habegger, the child's day care provider in Switzerland. In her deposition, Frau Habegger revealed that in January 1999, the Mother communicated her intent to move to Germany in the summer of 1999, with the child:

> Q. This conversation that you had with Mrs. Morris in January of 1999, tell me specifically what was said.
>
> A. Mrs. Morris told me that she had difficulties in her marriage, and that— she said she very likely would separate. And that she wanted to go to Germany—in the summer to Germany.
>
> . . .

Q. Frau Habegger, did Sonja Morris ask you to keep her conversation with you about marital difficulties a secret? A. She had requested of me not pass out the information to her colleagues. (Defendant's Exhibit N, pages 22–23). On February 7, 1999, without the Father's knowledge or consent, the Mother extended the rental agreement for their apartment in Switzerland through the end of 1999.

At trial, the Father testified to his decision to finally act upon his instinct that the Mother planned to keep the child in Europe. On February 21, 1999, when his guest teaching duties under the contract with the University of Basel were fulfilled, the Father returned to Colorado with the child without the Mother's knowledge. The Mother was traveling in Switzerland at the time of the removal. Upon her return, on February 22, 1999, the Mother obtained an *ex parte* custody order from a Swiss Court granting her custody of the child. There was an arrest warrant issued for the Father in Switzerland upon a charge of keeping a minor from his legal custodian. (Defendant's Exhibit T). On February 22, 1999, the Father filed a Petition for Dissolution of Marriage seeking custody of the minor child in the Arapahoe County District Court for the State of Colorado. The Mother was served in Switzerland in accordance with Swiss law on February 23, 1999. Subsequently, the Mother filed for divorce with the Swiss court on February 24, 1999. Both the Colorado and the Swiss custody actions have been stayed by this Court pending resolution of this Hague Convention proceeding.

## II.

Under the Convention, I am required to promptly return a child to his place of habitual residence when that child has been wrongfully removed to a contracting state. The stated objective of the Convention is "to secure the prompt return of children wrongfully removed to or retained in any Contracting State," and "to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States." Hague Convention, Art. 1, (a), (b). Both Switzerland and the United States are contracting states to the Hague Convention.

Pursuant to Article 19 of the Convention, I have no power to pass on the merits of custody. Rather, the issue before me is whether custody should ultimately be tried in Switzerland or Colorado. To that end, under Article 3 of the Convention, a removal or retention of a child is considered "wrongful" when,

(a) it is in breach of rights of custody attributed to a person ... under the law of the state in which the child was a habitual resident immediately before the removal or retention; and

(b) at the time of the removal or retention, those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.

This case presents two issues: (1) whether the minor child, Sean Morris, was "habitually resident" in Switzerland or in Colorado prior to his removal or retention; and, (2) whether the Mother had lawful rights of custody at the time of the removal or retention based upon the law of the habitual residence. *See Friedrich v. Friedrich,* 983 F.2d 1396, 1400 (6th Cir. 1993); *Meredith v. Meredith,* 759 F.Supp. 1432, 1434 (D.Ariz.1991). The first issue is dispositive. There is no dispute that the child's habitual residence was Colorado before the family went to Switzerland. If the child's habitual residence shifted from Colorado to Switzerland, the removal was wrongful and the Swiss Court would address custody. If the child's habitual residence remained in Colorado, removal was not wrongful and custody will be decided in Colorado. Under the facts of this case, I hold the child's habitual residence remained in Colorado, never shifted to Swit-

zerland and, thus, there was no wrongful removal.

██ The term "habitual residence" is not defined in the Convention or its implementing federal legislation. *See id.; see also Feder v. Evans–Feder,* 63 F.3d 217, 222 (3d Cir.1995). Therefore, the determination of a child's habitual residence is a factual determination made on a case-by-case basis. *See Wipranik v. Superior Court,* 63 Cal.App.4th 315, 321, 73 Cal. Rptr.2d 734 (Cal.App.1998) ("the apparent intent is for the concept to remain fluid and fact based, without becoming rigid."). The concept is not synonymous with common law "domicile." *See Re Bates,* No. CA 122/89, 1, 10, High Court of Justice, United Kingdom, (1989)(www.hilton-house.com/cases/Bates_uk.txt). Under the Convention, a child cannot have more than one habitual residence at a time.

██ When the parties left Colorado for the Father's sabbatical in Switzerland on August 1, 1998, the child was habitually resident in Colorado. The Mother and Father lived in Colorado since 1991, Sean Morris was born in Colorado, and the parties established significant connections with Colorado. The term "habitual residence" connotes more than a mere physical presence in a contracting state. Therefore, the fact that the parents and the child were physically present in Switzerland for some period of time, does not, in and of itself, persuade me that the child's habitual residence shifted from Colorado to Switzerland.

██ While the law requires me to focus on the child in determining his habitual residence, because the minor child in this case is merely two years old, he is unable to meaningfully and independently express his feelings regarding his habitual residence and has no capacity to determine such status. In such a case I must consider the overtly-stated intentions and conduct of his parents in order to determine whether they formed the necessary "degree of settled purpose" that is required for a habitual residence. *See Re Bates,* No. CA 122/89; *In re Robinson,* 983 F.Supp. 1339 (D.Colo.1997). Further, in determining a habitual residence, I must focus on the conduct of both of the parents and not the future intentions of one of the parents. *See Friedrich,* 983 F.2d at 1401.

The evidence shows that on October 1, 1998, only two months after arriving in Switzerland, the parents rented an apartment in Bad Saeckingen, Germany until November 30, 1998. The Father, Mother, and child commuted to Switzerland four days a week where the Father taught at the University of Basel, the Mother had temporary employment, and the child attended day care. During these two months, the parties spent three days every week in Germany, going to Switzerland on the remaining four days only for purposes of employment and day care. Every night of the week was spent in Germany. While not dispositive, the fact that the parties lived in Germany for these two months detracts from the argument that Switzerland became the child's habitual residence. The child lived with his parents in Switzerland for only 104 days out of a total 205 days away from Colorado. The remainder was spent either living in Germany or vacationing elsewhere in Europe.

██ In determining the habitual residence of a child, the duration of the residence in the contracting state is a factor for consideration. *See Mozes v. Mozes,* 19 F.Supp.2d 1108, 1115 (C.D.Ca.1998). Where the duration of a stay in a foreign country is intended to be indefinite, the habitual residence of a child is usually in that foreign country. *See Falls v. Downie,* 871 F.Supp. 100, 102 (D.Mass.1994); *Levesque v. Levesque,* 816 F.Supp. 662, 666 (D.Kan.1993). However, where the stay is intended for a limited, distinct period of time, especially for less than one year, courts have been reluctant to find that a new habitual residence has been established. *See In re. S (Minors),* F.L.R. 70 (UK 1994) (www.hiltonhouse.com/cases/In-res3_uk.txt).

■ I find and conclude that the parties' shared intention was to remain in Switzerland for a limited period of time defined by the Father's sabbatical leave. The Father's sabbatical leave terminated on March 31, 1999, although his teaching duties concluded in February 1999. The Father's teaching assignment at the University of Basel, was for one semester as a guest professor. The Father signed a contract with Metro, where he serves as a tenured professor, to return to Colorado to resume his teaching duties at the end of his sabbatical. The Father sought no permanent teaching position in Switzerland. While in Switzerland, the parties actually resided there for only four months, or 104 days, during which time they rented housing furnished by the University of Basel. Although they sold their home in Colorado, they intended to purchase a new and larger home upon their return. This intent is manifested by the fact that they stored their furniture and automobile in Colorado, and the child traveled to Switzerland on a United States passport with a round-trip ticket. Although the Mother argues that the Father intended to retire in Austria, there was no persuasive evidence of such intent. Further, the Father testified credibly that he had no intent to retire in Austria or elsewhere in the next 10–15 years.

The Mother's testimony that she intended to remain in Switzerland, when viewed with other evidence in the case, is not credible. The Mother is a German national and holds a German passport, as does the minor child. The Mother has family and close friends in Germany, and no relatives in Switzerland. Neither the Mother nor the Father is a Swiss citizen, and neither holds a Swiss passport. During the sabbatical stay, the Mother traveled with some frequency to Germany. Finally, the deposition testimony of Frau Habegger, the child's Swiss day care provider, that the Mother, in January of 1999, told her that she intended to move to Germany in the upcoming summer months is in direct conflict with the Mother's testimony, and is persuasive as to the Mother's true intent.

The Father returned to Colorado with the minor child on February 21, 1999. The fact that the Father cut short his sabbatical is not persuasive to this Court on the issue of habitual residence, because the child's habitual residence never shifted from Colorado to Switzerland. The Father testified that he was concerned that he would be denied access to his child if the custody issue were tried in a German or Swiss Court. During the sabbatical, both the Father and the Mother independently sought the advice of European counsel due to marital difficulties. This evidence simply shows that their marriage was failing and that each were concerned over the custody of their child.

I am also persuaded by the few sabbatical cases decided pursuant to the Convention. In those cases, as in this case, the parties arrived at the location of the sabbatical leave with a shared intention to return to their state of origin. However, at some time during the sabbatical, one of the parties changed his or her mind, and expressed directly or indirectly an intent to remain in the new state. *See In re S (Minors)* F.L.R. 70; *Storvik v. Storvik,* Calif.Super. Court, No. FL 047219 (1995) (www.hiltonhouse.com/cases/Storvik_California.txt). In both *Storvik* and *In re S* the courts found that the child's habitual residence remained in the state of origin and that the unilateral change in position of one of the parents was not sufficient to alter the parties' settled intention that their state of origin was to remain the habitual residence of the child during the sabbatical. *See Storvik,* No. FL 047219 . ("the unilateral intent of a parent cannot change the habitual residence of a child."); *see also In re Application of Ponath,* 829 F.Supp. 363 (D.Utah 1993); *Mozes,* 19 F.Supp.2d at 1115 ("to establish that the habitual residence of a child has shifted, the law requires that a child be in the new forum by mutual consent of the parents

and that the child has become settled in that new forum").

Similarly in this case, upon their departure to Switzerland, the parties shared a clear intent to return to Colorado. At some time during the sabbatical, the Mother changed her mind and formed an individual intention not to return to Colorado. Indeed, the evidence establishes that her newly formed intent was to move to Germany. This unilateral change of position does not make Switzerland the child's new habitual residence, especially where, as here, the evidence shows that the Father never acquiesced in the child remaining in Switzerland or, for that matter, in Germany. *In re S (Minors)* F.L.R. 70; *Storvik,* No. FL 047219; *In re A and Another (minors),* 1992 1 All ER 929, CA (1992) Fam. 106 (www.hiltonhouse.com/cases/Inrea2_uk.txt). In a sabbatical situation such as this one, in which a family intends to be in a foreign country for a defined period of time of less than one year and for a defined, specific purpose, a parent's unilaterally changed intent is not enough to shift the habitual residence of a minor child. To find otherwise would have significant negative policy implications by discouraging extended international travel and temporary international employment for scholastic and professional enrichment.

The parties stipulated and I find and conclude that, under the law of Switzerland, both parties had lawful rights of custody when the Father returned to Colorado on February 21, 1999. Based on the credible evidence and the applicable law, I find and conclude that the Mother failed to meet her burden of establishing, by a preponderance of the evidence, that the child's habitual residence prior to the father's return home with the child shifted to Switzerland. I conclude that the habitual residence of the child on February 21, 1999, remained in Colorado. Therefore, his removal to Colorado was not wrongful. Under Article 3 of the Convention and its federal implementing legislation, the proper forum to litigate custody is the Arapa-

hoe County District Court for the State of Colorado. Therefore, I will not order the return of the child to Switzerland and the Petition for Return of the Child is denied. This conclusion terminates my analysis with regard to the application of the Convention. I stress, however, that my finding of no wrongful removal has no bearing upon the ultimate issue of custody. My decision simply determines that a court of Colorado, instead of a Swiss court, will be making the ultimate decision with regard to custody.

WHEREFORE, THE COURT ORDERS that the Petition for Return of Child is DENIED and this action is DISMISSED with prejudice. Accordingly, the stay in the Arapahoe County, Colorado action has been dissolved.