Opinion issued December 30, 2010

 



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-09-00489-CV

———————————

Angeliki Livanos, Appellant

V.

Nikolaos
Livanos, Appellee



 



 

On Appeal from the 328th District Court

Fort Bend County, Texas



Trial Court Case No. 09-DCV-169500

 



 

O P I N I O N

          Appellee,
Nikolaos Livanos (“Nick”), brought a petition for the return of his minor son,
Evangelos, pursuant to the Hague Convention on the Civil Aspects of
International Child Abduction (“Hague Convention”) against his estranged wife,
Angeliki Livanos (“Angie”).[1]  After Angie did not attend the scheduled hearing
on the petition, the trial court signed a default order against her, ordering
Angie to return Evangelos to Nick and to pay $68,300 in attorney’s fees and
expenses.[2]  In four issues on appeal, Angie contends that
(1) the default order rendered against her is void due to defects in the
service and return of process; (2) the trial court erred in denying her motion
for new trial because the undisputed evidence reflected that Nick did not
properly serve her; (3) the expedited nature of Hague Convention proceedings
does not abdicate either Texas procedural rules regarding proper service or
due-process protections; and (4) the trial court abused its discretion in
awarding excessive and unreasonable attorney’s fees and expenses to Nick.

          We
reverse the judgment and remand the case for a new trial.




 

Background

          Angie
and Nick, who are both dual citizens of Greece and the United States, married
in Athens in 1989 and had two children together, Kalliopi and Evangelos.[3]  Angie was hospitalized in Greece from
December 24, 2006 to January 25, 2007, and diagnosed with “psychotic syndrome
of paranoid type.”  The parties separated
in September 2007, and both brought “applications for relief” in a Greek court seeking
custody of their children.  The Greek
court temporarily awarded custody of the children to Nick, ordered Angie to
move out of their house and in with her mother to receive support, and established
visitation rights for Angie.

          In
March 2008, the Greek court modified its temporary order with respect to
Evangelos and instituted a rotating custody arrangement.  Under this plan, Nick had custody for April,
June, and August 2008, while Angie had custody for May, July, and September 2008.  During the months in which the parent did not
have custody, they could communicate with Evangelos every Monday and Thursday
afternoon and every second weekend, except during July and August “due to the
absence of [Evangelos] in summer vacations.”

          On
July 7, 2008, the court granted exclusive temporary custody to Nick and allowed
Angie to visit the children three times per week and on weekends and holidays
in the presence of her mother.  This
order provided that it would become effective on August 22, 2008, and that the
March 2008 order establishing the rotating custody plan would remain in effect
until that time.

          In
July 2008, while Angie had custody of Evangelos, she went on vacation with
Evangelos for two weeks and “disappeared” toward the end of the month.  Angie did not contact Nick during this time
and she did not return Evangelos to Nick on August 1, as required by the March
2008 custody order.  Nick later learned
from the United States Department of State that Angie entered the United States
on July 28, 2008.

          On
October 15, 2008, the Greek court held an evidentiary hearing, at which Nick
was present but Angie was not.  The court
found that, during July, Nick only had the right of communication with
Evangelos but that he would resume custody during August.  On July 15, 2008, Angie, with the assistance
of her mother, left her mother’s house with Evangelos for an “unknown
destination” without informing Nick and “depriv[ed Evangelos of] any sort of
communication with his father.”  The
court found that, as of the hearing date, Angie continued to withhold Evangelos
from Nick.  The court considered Angie’s
medical records, as well as the reports of two court-appointed experts
confirming Angie’s earlier diagnosis of “delirium disorder,” and found that
Angie was a danger to herself and her children, and “needs systematic psychiatric
attendance and psychotherapy.”  The court
again modified the custody order to grant exclusive custody to Nick and to
allow visitation by Angie every Sunday under Nick’s supervision.

          On
December 31, 2008, Greek officials sent Nick’s Hague Convention application for
the return of Evangelos to the United States Central Authority.  In the application, Nick expressed concern
over the “serious psychological and mental condition of [Angie] and the danger
of the safety of [Evangelos].”  At this
time, Nick believed that Angie and Evangelos were located with Angie’s
relatives in Virginia.

          After
submitting his application to the United States Central Authority, Nick learned
that, on October 31, 2008, Angie had represented to the Texas Department of
Public Safety that she lived at 5115 Barlow Bend Lane in Katy.  Nick also discovered a 2009 Michigan tax
statement which reflected the same mailing address for Angie.

          On
February 9, 2009, Nick filed a petition for the return of the child in Fort
Bend County, Texas, pursuant to the Hague Convention and the federal International
Child Abduction Remedies Act (“ICARA”). 
42 U.S.C. §§ 11601–11611 (2006).  Nick attached his Hague Convention application
and the Greek court’s October 15, 2008 custody order.  Nick alleged that Evangelos had habitually
resided in Greece for all five years of his life before Angie wrongfully
removed him from Greece in July 2008.  Nick
sought the immediate return of Evangelos, as well as all costs and fees that he
had incurred in his quest to recover Evangelos. 
Nick simultaneously requested that the trial court issue a writ of
attachment, entitling law enforcement officials to take possession of Evangelos
and return him to Nick.  Nick requested
personal service of the petition and the writ on Angie at her Katy address.

          The
trial court ordered the issuance of the writ of attachment on February 9,
2009.  That same day, the Fort Bend
County District Clerk’s Office issued citation and the writ.  The trial court also ordered a hearing on
Nick’s Hague Convention petition for 8:30 a.m. on February 12.

          Kenny
Eaves, a private process server, attempted to personally serve Angie at her
Katy residence three times on February 10 and 11.  Eaves reported that on the first occasion,
the morning of February 10, he spoke to an adult female who informed him that
Angie was not present, although two vehicles were parked at the house.  Eaves also reported that he received no
answer when he knocked on the evening of February 10 and the morning of
February 11, although the same two vehicles were again present at the latter
time.  After this third unsuccessful
attempt, Nick moved for alternative service under Texas Rule of Civil Procedure
106 and attached Eaves’s affidavit detailing his service attempts as evidence
demonstrating the futility of personal service on Angie.  Nick requested that the trial court authorize
service on Angie either by leaving a copy of the petition, writ, and all
related documents with anyone over the age of sixteen present at Angie’s Katy
residence or by affixing the documents to the front door.

          On
February 11, 2009, the trial court granted Nick’s motion for alternative
service and issued the following order:

[The Court] ORDERS that
service on ANGELIKI LIVANOS be effected by any person authorized by rule 103,
Texas Rules of Civil Procedure, by leaving a copy of the citation with precept
and pleadings and orders attached at 5115 Barlow Bend, Katy, Texas 77450, Fort
Bend County, Texas, with anyone over sixteen years of age at that address or by
taping it to the front door.  Proof of
service shall be made by the person executing the return, stating when the
citation was served, on whom it was served, and where it was served.

 

The precept to serve Angie, filed with the clerk on
February 12, 2009, reflected that Eaves effectuated service at 4:11 p.m. on
February 11 “by delivering to a [female] over the age of 16 per 106 order” at
the Katy residence.  The precept also
reflected that Eaves served Angie with the order for issuance of the writ of
attachment, petition for the return of the child, order setting the hearing on
the petition for February 12, and the order granting alternative service.

          The
trial court held a hearing on Nick’s petition on the morning of February 12,
2009.  Angie was not present, nor did
counsel appear on her behalf.  At the
beginning of the hearing, the trial court noted that its file contained the
return of a precept served on Angie the previous day after the court authorized
alternative service.  During the hearing,
the trial court admitted Nick’s Hague Convention application and the October
15, 2008 Greek custody order.  Nick
testified that Evangelos had habitually resided in Greece since his birth and that
the Greek court had granted Nick the exclusive right of custody over
Evangelos.  The trial court also admitted
a spreadsheet documenting Nick’s fees and expenses incurred in trying to locate
Evangelos.  This document indicated that
Nick had spent a total of $68,300:  (1)
$6,500 on a hotel in Houston and roundtrip airfare between Houston and Greece;
(2) $11,000 in private investigator fees in Virginia, Texas, and Illinois; and
(3) $50,800 in attorney’s fees in Texas, Virginia, and Greece.  Nick clarified that the $25,800 spent on
attorney’s fees in Greece related solely to his Hague Convention application
and not to the prior custody proceedings in the Greek court.  Nick’s counsel opined that the attorney’s
fees and expenses were reasonable and necessary, and that they are mandatory
under a successful Hague Convention petition.

          On
February 12, 2009, the same day that Eaves filed the return of service and that
the trial court held the hearing, the trial court signed a default order to
return the child.[4]  The order recited that Angie “did not appear,
although given notice as required by law.” 
The trial court found that Evangelos “habitually resided” in Greece,
that Angie wrongfully removed Evangelos from Greece and continued to wrongfully
retain him, and that Angie’s actions constituted a “breach of rights of custody
attributed to [Nick] under the law of Greece.” 
The court ordered Angie to deliver Evangelos into Nick’s possession and
to pay $68,300 to Nick for “attorney’s fees, necessary travel, and other
expenses.”  The trial court also issued a
writ of attachment, directing law enforcement officials to deliver Evangelos into
Nick’s custody.

          Angie
specially appeared on March 16, 2009, contending that the trial court lacked
personal jurisdiction over her, as well as subject-matter jurisdiction over the
case because Evangelos was not located in Texas at the time Nick filed his
petition.  Angie simultaneously filed an
unverified motion for new trial, asserting that Nick did not properly serve her
with citation.  Angie amended her motion
for new trial, subject to her special appearance, on April 24, 2009, and
specified four ways in which service was defective.  Angie also contended that the award of over
$68,000 in fees and expenses was “inappropriate and exceed[ed] the scope of
costs and fees permitted by ICARA.”

          On
April 27, 2009, Angie moved the trial court to take judicial notice of
adjudicative facts relating to the service of process upon her.  The trial court granted this motion.  Nick responded to Angie’s motion for new
trial and argued that he properly served Angie by complying with the trial
court’s order authorizing alternative service. 
Nick also argued that the trial court properly entered a default order
on the same day that Eaves filed the proof of service because the Hague
Convention and ICARA require expedited disposition of cases and allow for
relaxation of the usual strict procedural rules.  Nick also asserted that a new trial was
improper because, on March 23, 2009, a federal district court in Maryland
ordered the return of Evangelos to Nick, after Evangelos was discovered in
Child Protective Services custody in Maryland, and the trial court was required
to give full faith and credit to that order.

          The
trial court denied Angie’s motion for new trial, and this appeal followed.

Proper Service of Process

          In
her first issue, Angie contends that the trial court never acquired personal
jurisdiction over her due to Nick’s failure to properly serve her, and
therefore the default judgment against her is void.  Angie identifies six specific defects in the
service of Nick’s Hague Convention petition: 
(1) the citation did not include the name of the petitioner; (2) the
return of service was not properly verified; (3) the return of service was not
on file with the clerk’s office for the required ten days before rendition of a
default judgment; (4) the return does not reflect that Nick served Angie with
documents relating to the writ of attachment; (5) the process server did not
endorse the return on the citation or attach the endorsement to the citation;
and (6) the return does not specify the exact person served with process.

          A
claim of a defect in service of process challenges the trial court’s personal
jurisdiction over the defendant.  See Furst v. Smith, 176 S.W.3d 864, 868
(Tex. App.—Houston [1st Dist.] 2005, no pet.). 
Whether the trial court had personal jurisdiction over a defendant is a
question of law.  Id.  When a defendant has not
answered, the trial court acquires jurisdiction over the defendant solely on
proof of proper service.  Id. (citing Tex. R. Civ. P. 107 (prohibiting rendition of default
judgment unless proof of proper service of process and return have been on file
for ten days) and Wilson v. Dunn, 800
S.W.2d 833, 836 (Tex. 1990)).

          A
default judgment cannot withstand a direct attack by a defendant who
demonstrates that she was not served in strict compliance with the Texas Rules
of Civil Procedure.  Hubicki v. Festina, 226 S.W.3d 405, 408 (Tex. 2007); McGraw-Hill, Inc. v. Futrell, 823 S.W.2d
414, 416 (Tex. App.—Houston [1st Dist.] 1992, writ denied).  In a direct attack on a judgment, we do not
presume the validity of issuance, service, or return of citation.  Uvalde
Country Club v. Martin Linen Supply Co., 690 S.W.2d 884, 885 (Tex. 1985); Velasco v. Ayala, 312 S.W.3d 783, 797
(Tex. App.—Houston [1st Dist.] 2009, no pet.). 
If the record does not affirmatively show strict compliance with the
rules regarding service of citation, then service was invalid and the judgment
is void.  Velasco, 312 S.W.3d at 797; see
also Lytle v. Cunningham, 261 S.W.3d 837, 840 (Tex. App.—Dallas 2008, no
pet.) (“When the attempted service of process is invalid, the trial court
acquires no personal jurisdiction over the defendant, and the default judgment
is void.”); Marrot Commc’ns, Inc. v. Town
& Country P’ship, 227 S.W.3d 372, 376 (Tex. App.—Houston [1st Dist.]
2007, pet. denied) (“Virtually any deviation from the statutory requisites for
service of process will destroy a default judgment.”).  Actual notice, without proper service, is not
sufficient to invoke a trial court’s jurisdiction to render a default
judgment.  Wilson, 800 S.W.2d at 836; see
also Tex. R. Civ. P. 124
(providing that no judgment shall “be rendered against any defendant unless
upon service, or acceptance or waiver of process, or upon an appearance by the
defendant”).

          Texas
Rule of Civil Procedure 107 provides that:

The return of the officer or
authorized person executing the citation shall be endorsed on or attached to
the same; it shall state when the citation was served and the manner of service
and be signed by the officer officially or by the authorized person.  The return of citation by an authorized
person shall be verified. . . .

 

. . . .

 

Where citation is executed
by an alternative method as authorized by Rule 106, proof of service shall be
made in the manner ordered by the court.

 

. . . .

 

No default judgment shall be
granted in any cause until the citation, or
process . . . with proof of service . . . as
ordered by the court in the event citation is executed under Rule 106, shall
have been on file with the clerk of the court ten days, exclusive of the day of
filing and the day of judgment.

 

Tex. R. Civ. P. 107.  Although Rule 107 allows for deviations in
the form and content of the proof of service if the trial court has ordered an
alternate method of service under Rule 106, as is the case here, the rule still
requires that the proof of service be on file with the clerk for ten days before
rendition of a default judgment.  Id.

          The
return or proof of service must “affirmatively reveal[] that it has been in the
district clerk’s office for the required ten days,” and, if not, “the default
judgment rendered is void.”  HB & WM, Inc. v. Smith, 802 S.W.2d
279, 281 (Tex. App.—San Antonio 1990, no writ); see also Union Pac. Corp. v. Legg, 49 S.W.3d 72, 78 (Tex.
App.—Austin 2001, no pet.) (holding that failure to demonstrate return on file
for required ten days before default “violates the strict-compliance
requirement”); Onyx TV v. TV Strategy
Group, LLC, 990 S.W.2d 427, 431 (Tex. App.—Texarkana 1999, no pet.).

          Here,
it is undisputed that Kenny Eaves, the private process server who served Angie,
filed the return of service with the clerk on February 12, 2009, the same day
that the trial court rendered a default judgment against Angie.  This defect alone demonstrates that Nick did
not strictly comply with the rules for service and return of citation.[5]  Because of this failure, the trial court did
not acquire personal jurisdiction over Angie, and the subsequent default
judgment rendered against her is void.

          We
sustain Angie’s first issue.

Effect of Hague Convention

          Although
we hold that, under the Texas Rules of Civil Procedure, service upon Angie was
invalid because the proof of service was not on file with the clerk for ten
days before rendition of the default judgment, Nick contends that the Uniform
Child Custody Jurisdiction and Enforcement Act (“UCCJEA”), which provides the
notice requirements applicable to Hague Convention proceedings, does not
require strict compliance with Rule 107. 
See UCCJEA, Tex. Fam. Code Ann.
§§ 152.001–.317 (Vernon 2008).

          In
1980, various nations, including the United States and Greece, agreed to the
Hague Convention on the Civil Aspects of International Child Abduction (“HCCAICA”)
to “protect children internationally from the harmful effects of their wrongful
removal or retention and to establish procedures to ensure their prompt return
to the State of their habitual residence.” 
Hague Convention on Civil Aspects of International Child Abduction,
pmbl., Oct. 25, 1980, T.I.A.S. No. 11670, 1434 U.N.T.S. 48; In re J.G., 301 S.W.3d 376, 378–79 (Tex.
App.—Dallas 2009, no pet.); In re
A.P.V.G., 251 S.W.3d 117, 122 (Tex. App.—Corpus Christi 2008, no
pet.).  The purposes of the Hague
Convention include (1) preserving the “pre-abduction status quo custody arrangements”
between the parties and (2) deterring a parent from “crossing intentional
boundaries in search of a more sympathetic court.”  A.P.V.G.,
251 S.W.3d at 122 (citing Lops v. Lops,
140 F.3d 927, 936 (11th Cir. 1998)).  A
court hearing a Hague Convention petition under the HCCAICA “has the authority
to determine the merits of an abduction claim, but not the merits of the
underlying custody claim.”  Id. (citing Blondin v. Dubois, 189 F.3d 240, 245 (2d Cir. 1999)).  The premise of the Hague Convention is that
the country in which the child has his “habitual residence” is in the best
position to determine questions of parental custody and access.  Id.
(citing Croll v. Croll, 229 F.3d 133,
137 (2d Cir. 2000)).

          In
1988, Congress passed the International Child Abduction Remedies Act (“ICARA”)
to establish procedures for the implementation of the HCCAICA in the United
States.  See 42 U.S.C. § 11601(b)(1) (2006); J.G., 301 S.W.3d at 379. 
ICARA gives concurrent original jurisdiction to state and federal
district courts to hear the Hague Convention proceedings.  42 U.S.C. § 11603(a); J.G., 301 S.W.3d at 379.  To commence judicial proceedings under ICARA,
the petitioner may petition for the return of a child who has been wrongfully
removed from the child’s habitual residence in “any court which has
jurisdiction . . . and which is authorized to exercise its
jurisdiction in the place where the child is located at the time the petition is
filed.”  42 U.S.C. § 11603(b); J.G., 301 S.W.3d at 379.  A petitioner establishes wrongful removal by
proving by a preponderance of the evidence that the removal of the child was
“made in breach of the rights of custody of the petitioner under the law of the
country in which the child habitually resided immediately before the removal.”  J.G.,
301 S.W.3d at 379; 42 U.S.C. § 11603(e)(1)(A).  The respondent then has the opportunity to
establish certain affirmative defenses to the return of the child provided for
in the HCCAICA.  42 U.S.C.
§ 11603(e)(2).

          When
a petitioner files such a Hague Convention petition, notice “shall be given in
accordance with the applicable law governing notice in interstate child custody
proceedings.”  Id. § 11603(c).  In
Texas, the UCCJEA controls interstate child custody proceedings.  See
Tex. Fam. Code Ann.
§ 152.106 (Vernon 2008).  Under the
UCCJEA, before a trial court can make a child custody determination, “notice
and an opportunity to be heard in accordance with the standards of Section
152.108 must be given to . . . any person having physical
custody of the child.”  Id. § 152.205(a).  Section 152.108 provides that:

(a)  Notice required for the
exercise of jurisdiction when a person is outside this state may be given in a
manner prescribed by the law of this state for service of process or by the law
of the state in which the service is made. 
Notice must be given in a manner reasonably calculated to give actual
notice but may be by publication if other means are not effective.

 

(b) Proof of service may be made
in the manner prescribed by the law of this state or by the law of the state in
which service is made.

 

Id.
§ 152.108(a)–(b) (Vernon 2008). 
Under this section, a petitioner may serve the respondent in accordance
with either the Texas requirements for service of process or the requirements
of the state in which the respondent is actually served.[6]  Id.  Regardless of which option the petitioner
chooses, the petitioner must give notice “in a manner reasonably calculated to
give actual notice” of the suit.  Id.

          Nick
contends that, under the UCCJEA, “it is sufficient to serve a person with
process in any manner reasonably calculated to give actual notice.  That notice may be strictly in accordance
with Texas law prescribing the manner of service, but strict compliance is not
mandated.  Thus, the only mandatory
requirement under the UCCJEA is that notice be given in a manner reasonably
calculated to give actual notice.”  Nick’s
interpretation misconstrues section 152.108. 
The Texas Legislature intended to give petitioners the option to follow
either Texas notice requirements or the requirements of the jurisdiction in
which the petitioner actually serves the respondent.  See
House Comm. on Juvenile Justice & Family Issues, Bill Analysis, Tex. H.B.
797, 76th Leg., R.S. (1999) (Section 152.108 “[a]uthorizes notice required for
the exercise of jurisdiction to be given in a manner prescribed by the law of
this state for service of process or by the law of the state in which the
service is made.”).  Section 152.108 does
not allow a petitioner to forego strict compliance with Texas notice
requirements as long as the method used is reasonably calculated to give actual
notice to the respondent.  Instead, the
petitioner must follow either Texas’s notice requirements or the requirements
of the jurisdiction in which the respondent is served, and the petitioner must ensure that the respondent is served in a
manner reasonably calculated to give actual notice.  See
Tex. Fam. Code Ann.
§ 152.108(a).

          In
asserting that his actions complied with section 152.108, Nick ignores
subsection (b), which provides that proof of service may be made “in the manner
prescribed by the law of [Texas] or by the law of the state in which the
service is made.”  Tex. Fam. Code Ann. § 152.108(b).  In Texas, proof of service is governed by
Rule 107, which requires, among other things, that the proof of service be on
file with the clerk’s office for at least ten days before rendition of a
default judgment.  Tex. R. Civ. P. 107.  Contrary to Nick’s contentions, therefore, the
UCCJEA requires compliance with Rule 107.

          Nick
further contends that applying the “rigid time frame” of Rule 107’s ten-day
requirement “would work at cross-purposes with the object of the Hague
Convention by giving parents a guaranteed opportunity to flee the court’s
jurisdiction.”  Nick cites several
federal cases and cases from other states for the proposition that when a respondent
parent is a flight risk, the court may hold a hearing on the petition and order
the return of the child as soon as possible. 
See, e.g., Zajaczkowski v. Zajaczkowski, 932 F.
Supp. 128, 129, 132 (D. Md. 1996) (noting that “prompt action” is “at the heart
of the [Hague] Convention” and deciding to treat Hague Convention petitions as
applications for writs of habeas corpus); McCullough
v. McCullough, 4 F. Supp. 2d 411, 414–15 (W.D. Pa. 1998) (issuing warrant
in lieu of writ of habeas corpus for children while Hague Convention petition
remained pending to allow respondent to obtain counsel for hearing three days
later).  According to Nick, the Hague
Convention’s emphasis on expediency in returning wrongfully removed children to
their rightful custodial parent abrogates Rule 107’s requirement that proof of
service be on file with the clerk’s office for ten days before rendition of a
default judgment.

          Each
of the cases cited by Nick provides for an expedited hearing on the merits of
the Hague Convention petition, instead of following the slower timelines of the
federal and state rules of civil procedure. 
In Zajaczkowski, the United
States District Court of Maryland determined that, given the premium on the expeditious
resolution of Hague Convention controversies, it would treat Hague Convention petitions
like federal applications for writs of habeas corpus and would “hear evidence
and argument in summary fashion and decide the case at the hearing, unless, for
good cause shown, it finds reason for delay.”[7]  Zajaczkowski,
932 F. Supp. at 132.  In Antonio v. Bello, the United States
District Court for the Northern District of Georgia held an ex parte hearing in
which it ordered federal marshals to take custody of the child and to serve the
respondent with the Hague Convention petition. 
Antonio v. Bello, No.
Civ.A.1:04-CV-1555-T, 2004 WL 1895127, at *1 (N.D. Ga. June 7, 2004) (not
designated for publication).  At a later
hearing, the court released the child to the petitioner and refused to postpone
the hearing on the merits of the Hague Convention petition, scheduled for three
days later, due to the court’s crowded trial docket, which would require
waiting at least a month to hold the hearing if postponed.  Id.  The court held the hearing as scheduled, and
both parents were present and represented by counsel.  Id.

Similarly, in Ciotala v. Fiocca, an Ohio Court of Common Pleas disregarded an
Ohio state law requiring at least twenty days’ notice before a hearing in
parental proceedings and denied a motion for continuance, ruling that mail
service three days before the hearing was sufficient when the record reflected
that the respondent had actual notice of the impending Hague Convention
petition for at least three months before filing and that counsel for the
parties had corresponded regarding the petition.  Ciotala
v. Fiocca, 684 N.E.2d 763, 770–71 (Ohio Ct. Com. Pl. 1997); see also Wipranik v. Super. Ct. of Los
Angeles, 73 Cal. Rptr. 2d 734, 738 (Cal. Ct. App. 1998) (granting request
to shorten time before hearing and finding reasonable notice when counsel had
ten days to prepare for hearing).  None
of these cases involved a default judgment. 
In each case, despite either the shortened time period before the
hearing or the relaxed notice requirements, the respondent appeared and
participated in the hearing on the merits of the petition.  Because the respondents appeared in these
cases, personal jurisdiction concerns arising out of improper service were not
implicated.  Nick has not cited to any
case elevating the “prompt return” and expeditious action requirements of the
Hague Convention and ICARA over state procedural rules that must be followed
when rendering a default judgment.

          Nick
is understandably concerned that, upon receiving service of a Hague Convention petition,
a parent who has already fled the habitual residence of the child once will
flee with the child again, instead of using the judicial process to avail
herself of the Convention’s affirmative defenses to the return of the
child.  ICARA, however, provides a
solution to this dilemma by allowing a court exercising jurisdiction over a
Hague Convention petition to “take or cause to be taken measures under Federal
or State law, as appropriate, to protect the well-being of the child involved
or to prevent the child’s further removal or concealment before the final disposition
of the petition.”  42 U.S.C.
§ 11604(a).  The trial court may not
order the removal of the child from a person having physical control over the
child “unless the applicable requirements of state law are satisfied.”  Id.
§ 11604(b).

          In McCullough, the petitioner filed his
Hague Convention petition and a “warrant in lieu of a writ of habeas corpus”
for the return of his children before serving the petition on the respondent
because he considered the mother to be a flight risk.  McCullough,
4 F. Supp. 2d at 413.  The United States
District Court for the Western District of Pennsylvania noted that Pennsylvania
procedural law authorized this relief and the court issued a warrant for the
children and directed the federal marshals to serve the respondent with a copy
of the warrant and the petition.  Id. at 414–15.  The mother, who was not represented by
counsel, brought the children to the court for a hearing on the petition the
next day.  Id. at 416.  The trial court
released the children into the father’s custody and rescheduled the hearing for
three days later so the mother could obtain counsel.  Id.;
see also Fink v. Walker, No.
06-cv-807-JPG, 2007 WL 114005, at *2–5 (S.D. Ill. 2007) (not designated for
publication); Alonzo v. Claudino, No.
1:06CV00800, 2007 WL 475340, at *1 (M.D.N.C. 2007) (not designated for
publication); cf. Tsalafaos v. Tsalafaos, 34 F. Supp. 2d
320, 321 (D. Md. 1999) (denying petition for warrant in lieu of habeas corpus
because issuance of warrant not authorized by Maryland law in particular
circumstances).

          The
UCCJEA, for example, provides for two mechanisms through which a Hague
Convention petitioner can obtain immediate physical custody of the child
pending the trial court’s determination of the merits of the petition.  Family Code section 152.308 allows for
expedited enforcement of a child custody determination if a petitioner files a
verified petition stating, among other requirements, the jurisdictional basis
for the prior custody determination and whether the petitioner seeks any relief
other than immediate physical custody of the child.[8]  See
Tex. Fam. Code Ann.
§ 152.308(a)–(b) (Vernon 2008). 
Upon the filing of a petition meeting the requirements of this section,
the trial court “shall issue an order directing the respondent to appear in
person with or without the child at a hearing and may enter any order necessary
to ensure the safety of the parties and the child.  The hearing must be held on the next judicial
day after service of the order unless that date is impossible.”  Id.
§ 152.308(c).  The trial court’s
order must state the time and place of the hearing and inform the respondent
that the court will award immediate physical custody to the petitioner unless
the respondent appears and establishes certain defenses.  Id.
§ 152.308(d).

          A
petitioner may also, at the time he files a petition seeking enforcement of a
custody determination, file a “verified application for the issuance of a
warrant to take physical custody of the child if the child is imminently likely
to suffer serious physical harm or be removed from [Texas].”  Id.
§ 152.311(a) (Vernon 2008).  If the
court determines, based upon the testimony of the petitioner or another
witness, that the child is imminently likely to be removed from the state, it
may issue a warrant to take physical custody of the child and hold a hearing on
the petition the next judicial day after execution of the warrant, if
possible.  Id. § 152.311(b).  The
warrant must state the factual basis for the trial court’s conclusion that the
child is likely to be removed from the jurisdiction, direct law enforcement
officers to take immediate physical custody, and provide for placement of the
child “pending final relief.”  Id. § 152.311(c).  Both this provision and the provision for
expedited enforcement provide that the Hague Convention petition is to be
served on the respondent at the time the warrant or expedited petition is
executed.  Id. §§ 152.309, 152.311(d).

          The
UCCJEA, therefore, provides remedies for a petitioner to thwart the further removal
of the child from Texas pending the determination of the Hague Convention
petition.  If a petitioning parent
believes that the respondent is likely to attempt to flee the jurisdiction
before the trial court determines the merits of the Hague Convention petition,
he can seek this extraordinary relief either before serving the other parent
with the Convention petition or simultaneously with service.[9]

          We
conclude that the UCCJEA, which governs the notice and service requirements for
Hague Convention proceedings pursuant to ICARA, requires the petitioner to
strictly comply with the proof of service requirements of either Texas or the
jurisdiction in which the respondent is served. 
In this case, Nick needed to strictly comply with the Texas Rules of
Civil Procedure, specifically, Rule 107, which mandates that the proof of
service be on file with the clerk’s office for ten days before rendition of a
default judgment.  Neither the Hague
Convention nor ICARA, with their emphasis on expedited procedures and prompt
return of the child, abdicates this requirement.  We therefore hold that, because Nick did not
strictly comply with Rule 107, the trial court lacked personal jurisdiction to
render a default judgment against Angie, and the default judgment is void.

          We
sustain Angie’s third issue.




 

Conclusion

          We
reverse the default order and remand the case to the trial court for further
proceedings consistent with this opinion.[10]

 

 

                                                                   Evelyn
V. Keyes

                                                                   Justice


 

Panel
consists of Justices Keyes, Higley, and Bland.

 











[1]           Convention on the Civil Aspects of
International Child Abduction, Oct. 25, 1980, T.I.A.S. No. 11,670, 1434
U.N.T.S. 48.

 





[2]
          Evangelos was ultimately
discovered in Child Protective Services’ custody in Maryland several weeks
after the trial court rendered this default order against Angie.  Nick brought a second Hague Convention
petition in a Maryland federal district court, which the district court
granted.  Nick and Evangelos returned to
Greece shortly thereafter.

 





[3]
          Evangelos was five years old at
the time of the events of this case, but Kalliopi was eighteen and not subject
to the relevant Greek custody orders.





[4]
          The trial court signed a default
order, ordering Angie to return Evangelos to Nick.  Throughout this opinion, we refer to this
order as a default judgment.





[5]
          We therefore do not address the
remainder of the service defects that Angie alleges.  We also do not address Angie’s second issue,
in which she contends that the trial court erred in denying her motion for new
trial because the undisputed evidence reflected improper service and return of
citation.





[6]
          Here, Nick served Angie in
Texas, so we apply Texas law in determining whether Nick complied with the
notice requirements.





[7]
          One state appellate court in
Washington declined to follow Zajaczkowski,
noting that other federal courts do not treat Hague Convention petitions as
applications for writs of habeas corpus and observing that “significant
procedural differences” exist between state and federal courts.  In re
Marriage of Henches, No. 41887-4-I, 2000 WL 1667394, at *3 (Wash. Ct. App.
Nov. 6, 2000) (not designated for publication).





[8]
          We note that Nick did not file a
verified petition, nor did his petition include the specific requirements of
section 152.308(b).  See Tex. Fam. Code Ann.
§ 152.308(a)–(b) (Vernon 2008). 
Because Nick’s petition does not meet these requirements, it does not
qualify as a petition for expedited enforcement of a child custody
determination.  See In re S.J.O.B.G., 292 S.W.3d 764, 786 (Tex. App.—Beaumont 2009,
no pet.) (holding that petition cannot be considered under section 152.308 when
it does not meet the statutory requirements).





[9]
          Nick himself took advantage of a
similar remedy by requesting that the trial court issue a writ of attachment
for Evangelos when he filed his Hague Convention petition.





[10]
        Pursuant to Texas Rule of Civil
Procedure 123, no new service of process is necessary.  Tex.
R. Civ. P. 123 (“Where the judgment is reversed on
appeal . . . because of defective service of process, no
new citation shall be issued or served, but the defendant shall be presumed to
have entered his appearance to the term of the court at which the mandate shall
be filed.”); see also HB & WM, Inc.
v. Smith, 802 S.W.2d 279, 282 (Tex. App.—San Antonio 1990, no writ)
(holding that, by appealing from default judgment, appellants personally
appeared in case and further citation therefore unnecessary).